WEINBERG *v.* SAFE DEPOSIT AND TRUST
COMPANY OF BALTIMORE, Executor et al.

[No. 42, October Term, 1951.]

540

*Decided December 6, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Richard W. Case,* with whom were *William D. Macmillan* and *Semmes, Bowen & Semmes* on the brief, for the appellant.

*Morton E. Rome* for Safe Deposit and Trust Company of Baltimore, trustee of the trust estate created by the sixth item of the last will of Louis Weinberg, deceased.

*McKenny W. Egerton* for James J. Ryan, guardian *ad litem* for all persons not in being whose interests may be affected by this proceeding.

Submitted on brief by *Samuel J. Fisher* and *Allan H. Fisher, Jr.*, for Safe Deposit and Trust Company of Baltimore, executor under the last will of Louis Weinberg, deceased.

A brief of *amicus curiae* supporting the appellant was filed by *Redmond C. Stewart* and *Carlyle Barton* for Redmond C. Stewart and Edward W. Brown, executors of the Estate of William F. Cochran, deceased, and Nina Gill Cochran, widow of William F. Cochran.

MARBURY, C. J., delivered the opinion of the Court.

This case involves the Federal Estate Tax, the Maryland Apportionment Act, and the Maryland Distribution Statute. The chief question raised is whether a widow, who renounced her husband's will and elected to take her statutory share in his land and personal estate, receives that share without contribution to the Federal Estate Tax, or whether her share in the estate is to be calculated after the deduction of that tax. A subsidiary question is whether such a widow must contribute a part of the Federal Estate Tax because she received the proceeds of certain life insurance policies insuring her husband's life, which were includable in the decedent's gross estate for Federal Estate Tax purposes.

The facts are simple and uncontradicted. Louis Weinberg, a resident of Baltimore City, died testate on December 25, 1949. He was survived by a widow, the appellant, but by no descendants, nor was he survived by his father or his mother. His will was admitted to probate by the Orphans' Court of Baltimore City on January 5, 1950. On October 5, 1950, within the time given her by an appropriate enlargement, the widow delivered to the Register of Wills of Baltimore City her renunciation of the will, and her election to take, in

lieu of bequests or devises therein, her legal share of the estate. On December 19, 1950, the Safe Deposit & Trust Company of Baltimore, executor of the will, filed a bill in the Circuit Court of Baltimore City, alleging that as a result of the renunciation, the estate was entitled to the marital deduction provided for in the Revenue Act of 1948 Internal Revenue Code, Sec. 812, U. S. C. A., Title 26, Section 812, asking the court to take jurisdiction, and to instruct it as to this and other features of the estate. After appropriate answers had been filed by the interested parties, including a guardian *ad litem*, appointed for persons not in being whose interests might be affected, the chancellor filed a memorandum opinion and passed a decree on April 9, 1951, directing that the Federal Estate Tax be deducted before computing the share of the appellant, and finding that the executor was entitled to recover from the appellant the portion of the Federal Estate Tax attributable to the life insurance proceeds received by her. From this decree the widow appealed.

The Federal Estate Tax is annotated in U. S. C. A., Title 26. It provides for the computation of a tax on the estates of decedents dying after the date of its enactment, and fixes a rapidly increasing *per centum* of the net estate to be paid. Section 810. The gross estate is determined by including the value, at the time of the decedent's death, of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States, to the extent of the interest therein of the decedent at the time of his death, with the addition of dower and courtesy interests, transfers in contemplation of or taking effect at death, proceeds of life insurance, etc. Section 811. The net estate is fixed for the purpose of the tax by Section 812, by deducting from the gross estate an exemption of $100,000.00, but see Section 935(c), and then funeral expenses, administration expenses, claims against the estate, unpaid mortgages, etc.

The marital deduction, which is the part of the statute which gives rise to the present controversy, is set out in Section 812, sub-section (e) (1), and the aggregate amount of the deductions allowed under this sub-section are not to exceed 50% of the adjusted gross estate, the computation of which is provided in Section 812, sub-section (e) (2).

The marital deduction is a new feature in the estate tax, and was passed by the Revenue Act of 1948, going into effect on April 2, 1948. Its purpose was to give to surviving spouses in all states rights equivalent to those which had formerly existed only in certain states which had statutes providing for community property. Its operation reduces the tax very considerably, not only because the base upon which the tax is calculated is reduced, but also because the rate is progressive, and a much higher percentage is taken on larger bases. In the case before us, the net estate, before taxes, was one million six hundred and forty-eight thousand and odd dollars. The Federal Estate Tax on this, without any marital deduction, was a little in excess of half a million dollars. By the appellant's renunciation, this tax is reduced about one half, if the chancellor's decision is correct. It would be reduced to two hundred and thirteen thousand dollars, if the appellant's theory is correct.

The Federal Estate Tax was before the Supreme Court of the United States in the case of *Riggs v. Del Drago*, 317 U. S. 95, 63 S. Ct. 109, 87 L. Ed. 106. In that case, the State of New York had passed an apportionment act which, it was contended and decided by the New York Court of Appeals, conflicted with the federal act in the determination of who was to pay the tax, and had been held unconstitutional by that court. The Supreme Court reversed that holding, and said that Congress intended that the Federal Estate Tax should be paid out of the estate as a whole, but that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact

of the tax. In so deciding, the court said: "In the Act of 1916 Congress turned from the previous century's inheritance tax upon the receipt of property by survivors, see *Knowlton v. Moore,* 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; *Scholey v. Rew,* 23 Wall. 331, 23 L. Ed. 99, to an estate tax upon the transmission of a statutory 'net estate' by a decedent. That act directed payment by the executor in the first instance, Sec. 207, but provided also for payment in the event that he failed to pay, Sec. 208. It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax."

Some of the states, including Maryland, have passed apportionment acts directing what beneficiaries shall be liable for the payment of the tax after the amount of it is determined under the Federal law. There are also quite a number of states which have passed no such apportionment statutes. The Maryland statute is Article 81, Sec. 126. It was passed in its present form by Chapter 156 of the Acts of 1947, and therefore antedates the marital deduction. It has not, however, been changed since the marital deduction was inserted in the Federal Estate Tax, and, therefore, we must apply it as it stands to the new situation thus created. The statute under which the appellant here renounced her husband's will is Sec. 314 of Article 93 of the Code. It was last amended by Chapter 29 of the Acts of 1947, at the same session as that when the apportionment act was passed. Unless clearly contradictory, the two statutes must be construed together. Sec. 314 provides that if the renunciation, and the election thereby permitted, is of the legal share of both real and personal estate, the surviving wife shall take $2,000.00 and one-half of the residue of the lands as an heir, and one-half of the surplus personal estate remaining, if the deceased spouse

shall not be survived by descendants or a father or mother (as is the case here), and no more. When a spouse renounces, he or she takes in opposition to the will and is entitled to no benefits given under such will. *Kuykendall v. Devecmon,* 78 Md. 537, 543, 28 A. 412. It seems to be clear, therefore, that by her voluntary act of renouncing, the appellant cannot become entitled to more than $2,000.00 and one-half of the surplus personal estate remaining. The term "surplus personal estate" has been defined as meaning the entire balance, principal and income at the time of distribution, *Gardner v. Mercantile Trust Co.,* 164 Md. 280, 283, 164 A. 663, which necessarily is the balance after all expenses of administration and debts, including taxes, have been paid. Article 93, Secs. 5, 123 and 127. *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 31, 166 A. 599. *Marriott v. Marriott,* 175 Md. 567, 571, 3 A. 2d 493.

Sec. 126 of Article 81 provides for the prorating of the Federal Estate Tax, for which an executor is liable, and sub-section (4) provides that if any person otherwise liable under the preceding sub-sections is a surviving spouse, such surviving spouse shall be exonerated under certain circumstances, but such exoneration is not intended to apply to or reduce the amount of the contribution otherwise due with respect to the share of the surviving spouse in the true estate of the decedent but in ascertaining "his or her share in the true estate, whether upon testacy or intestacy or *upon renunciation in case of testacy, the amount of the estate tax* paid by the executor and not reimbursed by contributions under this section *shall be deducted with the administration expenses of the decedent as a general obligation of the true estate,* except to the extent the will of the decedent expressly otherwise directs; *provided, however, a spouse who renounces the will shall not benefit by any exoneration therein or herein in his or her favor.*" (Emphasis supplied.) The "true estate" mentioned in this quotation is defined in sub-paragraph 1(f) as all the real and personal property owned by decedent which would pass

to his heirs at law and next-of-kin under the Maryland statutes of descent and distribution in case of intestacy. The last clause of sub-section (4) above quoted specifically directs that no exoneration in a decedent's will, or in that section, shall apply to a spouse who renounces the will. It is therefore obvious that the appellant is not entitled to any of the benefits mentioned in that section, and she is not claiming any, but it is not obvious, as appellant claims, that this section has no application to the case before us. On the contrary, there is in this section a very clear direction that in ascertaining the share of a surviving spouse under the circumstances of this case, the amount of the estate tax shall be deducted with the administration expenses. This is a general direction which clearly indicates the intention of the Legislature that the estate tax shall be deducted before the widow gets her share, under Article 93, Sec. 314.

Article 81, Sec. 126(4), and Article 93, Sec. 314, are not only not contradictory, but they both clearly indicate the same result. Under Article 93, a renouncing spouse, such as the appellant, can get no more than $2,000 plus half of the surplus personal estate, which, as we have already shown, is the personal estate remaining after payment of administration expenses and debts, including taxes. Since appellant can get no more than half, after taxes, it would be impossible for her, under Article 93, to get a half before taxes, which would be much greater. She attempts to get around this dilemma by contending that Article 93, Sec. 314, has been repealed by Article 81, Sec. 126(9), which she claims compels a contradictory result. If they are contradictory, the later act would control, but the entire Article 81, Sec. 126, must be construed together, and, as we have shown, sub-section (4) is entirely in harmony with Article 93, Sec. 314.

In order to avoid the statement in Article 81, Sec. 126(4), appellant says that this sub-section does not apply to her and that sub-section (9) authorizes the court to adopt her construction of the statute. Sub-section (9) provides: "It is the intent of this section

and it shall be so construed and applied, to cast the burden of the estate tax proportionately and equitably upon all of those who benefit by reason of circumstances or transactions giving rise to the tax to the extent expressly provided by this section." Appellant says correctly that her renunciation was not a circumstance or transaction giving rise to the tax, and says that since the burden of the estate tax is intended by this sub-section to be cast only upon those who benefit by reason of something which gives rise to the tax, she, by necessary implication, should bear no part of this burden as she did nothing to increase the tax. It seems to us, however, that she has overlooked the real circumstance which gives rise to the tax. That is the death of her husband, and the tax is upon the transmission of his net estate. Her renunciation was voluntary and for her own benefit, and whether that benefit is larger or smaller in proportion to that received by other beneficiaries, is a result of the action she initiated and is controlled by the laws applicable to such a situation. By a combination of the marital deduction provided in the federal act, and the renunciation provided in the Maryland law, she has reduced her husband's net estate subject to the tax, but she is still one of the persons who benefitted by the circumstance of the death of her husband, and is therefore obligated to pay her share of the burden of the tax. That share is a matter for the Maryland Legislature to determine. We think it has been so determined by Article 93, Sec. 314, and by the provisions of subsection (4), and we do not think this is in any way modified or changed by the general wording of sub-section (9), which only states a general intent which is to be subject to the express provisions of the entire section.

Appellant contends, with much force, that such a result is entirely inequitable, and that we should not so construe the statutes. She shows that by her renunciation the estate tax was cut in half, but that her share, which, without the renunciation, would have been $696,000, is only increased to $789,000, and the share of the other

beneficiaries of the estate is increased from $365,000 to $548,000. Under the decree appealed from, therefore, she will save only $93,000, whereas the other beneficiaries will receive $182,000. She shows that if her contention is correct, the tax will be $213,800, rather than $251,695, that her share will increase from $696,000 to $919,000, or a total saving of $223,000, and that the other beneficiaries will save $96,000. She contends that it is inequitable that her action should benefit the other parties of the estate so much more than it benefits her, and that when by her action, the base upon which the Federal Estate Tax is calculated is reduced by 50%, she should be allowed to take her part of that 50%, (in this case approximately all of it), without paying any tax upon it at all.

However this may be, we cannot substitute considerations of fairness and equity for definite legislative directions on matters entirely within legislative control. If the Legislature finds that the present law produces general unfairness (about which we express no opinion), it can always change the statute, but unless and until it does, we can only interpret the law according to its plain intent and meaning.

We have been referred to, and we have found, very few decisions in other jurisdictions on the question we are now discussing. Only one of these cases is in a court of last resort. They vary from situations where a state has an apportionment statute with a definite exoneration to those where there is no apportionment statute. One of these decisions, relied on by appellant, is *In Re Peters' Will*, decided by the Surrogate's Court of Suffolk County, New York, 88 N. Y. S. 2d 142, and affirmed by the Supreme Court, Appellate Division, in a memorandum opinion, 89 N. Y. S. 2d 651. In that case, the court was construing the New York Decedent Estate Law and, on that construction, followed an earlier case, *Matter of Goldsmith's Estate*, 177 Misc. 298, 30 N. Y. S. 2d 474. The court held that under Sec. 83 of the Decedent Estate Law, the widow of an intestate would be entitled to

one-third of her husband's net estate *before estate taxes,* and the same situation existed if she renounced. Another section of the Decedent Estate Law, Section 124, provided for the apportionment of federal and state taxes. In that statute, it is provided that such proration shall be made by the surrogate in the proportion that the value of the benefit of each person bears to the total value of the benefits received by all interested in the estate, "except that in making such proration allowances shall be made *for any exemptions granted by the act imposing the tax and for any deduction allowed by such act for the purpose of arriving at the value of the net estate; * * *.*" (Emphasis supplied) The court held that the purpose of Sec. 812(e), Internal Revenue Code, which introduced the legal concept known as "marital deduction" was to allow a surviving spouse to take a certain portion of the estate free of federal estate taxes. It construed this section in connection with Sec. 124 of the Decedent Estate Law to mean that in arriving at the value of the net estate, to which the widow was entitled to one-third, there should be allowed the marital deduction provided by the federal act.

In *In Re Ittleson's Estate,* 94 N. Y. S. 2d 786, the Surrogate's Court of New York County construed the Decedent Estate Law, Sec. 18, sub-division 1, Section (a), as the establishment of a maximum and not as a formula for the computation of the elective share of a decedent spouse. That section limits the amount to one-half of the net estate, after deducting debts, funeral and administration expenses, *and any estate tax.* Sec. 83, referred to in the *Peters* case, *supra,* limited the right of the widow in the *Ittleson* case, then before the surrogate, to one-third of the net estate remaining after payment of debts, funeral and administration expenses. The elective share thus arrived at could not exceed one-half of the estate after deducting debts, funeral and administration expenses, *and any estate tax,* and, therefore, the court said that limitation would operate to

reduce the elective share under Sec. 83, if it were more than the maximum allowed by Sec. 18.

The Court of Appeals of Kentucky had before it a case in which a renouncing widow filed an action to recover from the executor of her husband's estate her statutory one-half interest in the surplus personalty without any reduction by reason of an apportionment of the federal estate tax. She won her case below, and on appeal the court said that all parties to the action were apparently satisfied with the judgment, but the appeal was prosecuted in order to obtain a final decision. We cannot, of course, assume that because the case was not earnestly argued, and because all parties desired to escape the payment of a heavier federal estate tax, the court did not decide the case correctly, but these facts do somewhat militate against the value of the decision as a precedent. Kentucky had no apportionment statute, and the court said that under the provisions of 26 U. S. C. A., Sec. 812, the surviving spouse was entitled to deduct the statutory allotment before arriving at the net value of the estate for the purposes of federal taxation. The court then quoted as authority the case of *In Re Peter's Will, supra,* and said that it appeared to it that the apparent purpose behind the enactment of the marital deduction was to equalize the estate tax in non-community property states with that in community property states, and to prepare the way for elimination from the tax burden all those whose legacies or allotments did not create or add to the tax, and it stated that under the authority of the *Peters* case, it concluded that if the marital allotment was a deductible item before arriving at the net taxable estate, and did not add to the tax, it could not be burdened with any portion of the federal estate tax. *Lincoln Bank & Trust Co. v. Huber,* Ky., 240 S. W. 2d 89. The reasoning in the *Huber* case cannot be applied in the face of a state statute which seems to direct otherwise. As we have already pointed out, the New York cases relied on the New York statute, which was definite.

There are some other cases in which the same question has been decided by courts not of last resort. Thus, in the Orphans' Court of Philadelphia County, Pennsylvania, in the *Estate of Marriott C. Norris, Deceased,* No. 17, 125, C. C. H. Inheritance, Estate, & Gift Tax Reporter (State), where a widow elected to take against the will of her husband, the court cited the Pennsylvania apportionment act which directs that the estate tax, except where otherwise directed by the testator, should be equitably prorated among the persons interested in the estate, except that in making such proration, allowances shall be made for any exceptions granted by the act imposing the tax, and for any deductions allowed by such act. The court followed the *Peters* case *supra,* in interpreting this to mean that a widow's intestate share is free of federal estate tax. In another Pennsylvania case, *In Re Estate Nevin E. Elliott,* No. 17, 372, C. C. H. Inheritance, Estate & Gift Tax Reporter (State), the Orphans' Court of Schuylkill County, Pennsylvania, held that the matter of the marital deduction was not subject to the tax because it, like bequests to public, charitable or religious purposes, does not contribute to the federal estate tax burden. The court followed the case of *Harvey Estate,* 350 Pa. 53, 38 A. 2d 262, which construed the tax proration act with respect to charities.

On the other hand, in the Ohio case of *Miller v. Hammond,* No. 17, 351, C. C. H. Inheritance, Estate & Gift Tax Reporter (State), the Court of Appeals of Franklin County, Ohio, had the case of a widow who elected to take against her husband's will, and the question posed was whether the widow was entitled to receive one-third of the assets of the estate before or after the payment of the federal estate tax. Ohio had never enacted an apportionment law, and the court there held that in the absence of one, the estate tax must be paid before distribution. The court said it realized that under certain circumstances inequalities might result, but this was a matter to be settled by the Legislature and not by the courts. In Illinois, the Superior Court of Cook County

had before it the case of *Northern Trust Co. v. Wilson,* No. 17, 222, C. C. H. Inheritance, Estate & Gift Tax Reporter (State). There was a renouncing widow, and it was held that her one-third interest should be computed after deduction of federal estate taxes. There was no apportionment law in Illinois, and the court decided the case on the ground that the Illinois courts had uniformly held that the federal estate tax on estates is in substance the same as cost or expenses of administration and ought to be deducted from the *corpus* of the estate before computing the distributive shares of those entitled to receive the estate. This case was appealed to the appellate court of Illinois for the First District, and the decree of the Superior Court was affirmed. The Probate Act provided that the widow was entitled to her share "after payment of all just claims", and the court said that in the absence of an apportionment statute, the cases cited from other jurisdictions involving apportionment did not apply, and held that the federal estate tax, under the Illinois law, was an item of expense just as debts, funeral expenses and the like, and came within the classification of just claims. See, 344 Ill. App. 508, 101 N. E. 2d 604.

We are unable to get much assistance from these cases because each of them involves a situation where a state either has an apportionment act, the provisions of which are unlike those of the Maryland act, or there is no apportionment act at all. It seems clear to us that the intention of the Maryland apportionment act is as expressed in Article 81, Sec. 126(4), that the amount of the estate tax paid by the executor is to be deducted with administration expenses of the decedent as a general obligation of the true estate. In the face of this statement, we are unable to decide otherwise than that the decree of the chancellor was correct on this question.

The second question raised by the appellant is whether she should be required to pay any part of the estate tax due from her husband's estate on a total of $37,613.22 which she received from his life insurance policies.

Internal Revenue Code, Sec. 826(c) (26 U. S. C. A. 826(c)) authorizes an executor to recover from a beneficiary of policies of insurance upon the life of a decedent, which are part of his gross estate, such portion of the tax as the proceeds of such policies bear to the sum of the net estate, and the amount of the exemption allowed in computing it. The section, however, contains this statement: "In the case of such proceeds receivable by the surviving spouse of the decedent for which a deduction is allowed under section 812(e) (the so-called 'marital deduction'), this subsection shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital deductions allowed under such subsection." Appellant contends that since she has received proceeds of insurance policies for which a marital deduction has been allowed, the executor cannot recover any portion of the estate tax attributable to these proceeds because of the dictates of Sec. 826(c).

The Maryland distribution statute, Sec. 126(3)(b) of Article 81 of the Code, provides: "If any part of the gross estate upon which the estate tax has been paid consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the sum of the net estate and the amount of the specific exemption allowed in computing the net estate." The appellant urges that as this Sec. 126 (3) (b) is in conflict with the Internal Revenue Code, Sec. 826(c), the state law is inapplicable in the present situation, and that the federal statute must be applied. It is not necessary for us to determine any question involving a conflict between Federal and State laws and possible constitutional complications, because it is apparent that Sec. 826(c) is not applicable to the present case. It states that it shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital de-

ductions allowed. The amount of the proceeds of insurance received by the appellant is clearly not in excess of the aggregate amount of the marital deduction allowed, and, therefore, the federal statute does not apply. Under the Maryland statute, it is quite clear that the executor has the right to claim contribution, and the chancellor so decided. We think his decision was correct.

As we find no error in the decree, it will be affirmed.

> *Decree affirmed with costs to be paid by Safe Deposit and Trust Company of Baltimore, Executor under the will of Louis Weinberg out of the principal of his estate.*