In re Matter of the Estate of R. Irl Jones.

*Langdon R. JONES and Byron Jones,
Executors, Appellants,*

v.

Mrs. Josephine JONES, Respondent.

No. 49572.

Supreme Court of Missouri,

En Banc.

March 9, 1964.

Robert H. Jones, Kennett, for appellants-executors.

Langdon R. Jones, pro se.

McHaney, Billings & Welman, Kennett, for respondent Josephine Jones.

PER CURIAM.

R. Irl Jones, a resident of Dunklin County, died on May 19, 1957. He was survived by his widow, Josephine Jones, but had no children or other lineal descendants. The will of R. Irl Jones was admitted to probate in Dunklin County. Langdon R. Jones and Byron Jones, brothers of the testator, were appointed executors of the estate.

On March 4, 1958, Josephine Jones elected, pursuant to Sec. 252 of the 1955 Missouri Probate Code (Laws of Mo.1955, p. 385, 465, Sec. 474.160, V.A.M.S.) to take her "legal share in the estate of the said R. Irl Jones" and to "renounce all provisions in the will of said R. Irl Jones * * *." Under the statute above referred to, Josephine Jones became entitled to receive, in addition to exempt property and an allowance for support for one year, one-half of the estate of R. Irl Jones.

In the course of administration of the estate, the federal estate tax liability was determined and the tax paid by the executors in the amount of $127,792.78. Al-though Josephine Jones made known at the time that the estate tax was determined, her position that she should bear no part of the federal estate tax except to the extent that non-probate property received by her contributed to the tax, the tax liability was determined on the theory that Josephine Jones would bear, ultimately, one-half of the estate tax and the marital deduction was taken accordingly.

On their final settlement, the executors charged Josephine Jones with one-half of the amount of the estate tax, less credit for one-half of the amount received from beneficiaries under the will as a contribution toward the estate tax, the net amount charged to her being $61,118.18. Josephine Jones filed objections to the final settlement on the grounds that she was improperly charged with one-half of the net federal estate tax. She claimed that, in view of the marital deduction, available under the federal estate tax law,[1] of the value of property passing to the surviving spouse up to one-half of the value of the gross estate, she was entitled, under her election, to receive one-half of the gross estate, free and clear of the federal estate tax, and that her share of such tax should depend solely upon the value of the property which she received, in excess of her marital deduction. The probate court overruled the objections and approved the final settlement. On appeal, the Circuit Court reversed, stating in its judgment: "The surviving widow's share of this estate 'should be received by her undiminished by any charge for federal estate tax except by that part of the federal estate tax allocable to that portion of her deceased husband's property received by her which formed part of his taxable estate.'" The court held that Josephine Jones was entitled to an additional $52,865.17 from the executors, the amount being determined after charging Josephine Jones for the tax on such portion of the estate received by her as exceeded the maximum marital deduction.

1. Section 2056, I.R.C.1954, 26 U.S.C.A. § 2056.

The executors have appealed to this court. The amount in controversy exceeds $15,000.00. Therefore, this court has jurisdiction of the appeal.

In the case of Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632, we considered where the ultimate burden of the federal estate tax should lie as between the beneficiaries of a decedent's estate and the recipients of non-testamentary property, included in the gross estate for estate tax purposes. In that case, we examined the approach which had been taken in other jurisdictions in determining the ultimate burden of the federal estate tax. We noted that in a number of jurisdictions the rule was that, absent a state statute or testamentary provision to the contrary, the ultimate burden of the estate tax fell upon the residuary estate.[2] We referred to statutes which, in an effort to obviate the harsh results that the "burden on the residue" rule frequently produced, had been enacted in a number (at that time 16) of jurisdictions, and which specified in what circumstances and in what manner the federal estate tax should be apportioned among the interested parties.[3] We then took note of the rule which, following the decision of the United States Supreme Court in the case of Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942), clearly establishing state authority to fix the ultimate burden of the federal estate tax, had been adopted in a number of jurisdictions, whereby, under equitable principles, the burden of the estate tax was apportioned among the persons sharing in the testator's probate estate and those receiving property not subject to probate, for which the estate tax was originally required to be paid by the estate, according to the manner in which the property received by each contributed to the estate tax liability. We chose, in the Carpenter case, in the absence of any statutory provision or clearly expressed intention of the testator to the contrary, to reject the "burden on the residue" rule, and to adopt, instead, the principle of "equitable apportionment."

In the case of Hammond v. Wheeler, Mo. Sup., 347 S.W.2d 884, decided by this court on July 10, 1961, we extended the application of the equitable apportionment principle to determine, in the light of the marital deduction, the ultimate estate tax liability of a widow who elected, under the statute in effect prior to the 1955 Probate Code, to share in her deceased husband's estate under the election statute, rather than under her husband's will. In that case the testator died in 1954. The widow elected to share in the estate under what was then Section 469.020(2) RSMo 1949 (repealed, Laws of Mo.1955, p. 385, Sec. A), which provided that she receive "one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts." Acknowledging that the principle of equitable apportionment could be applied only in the absence of statutory direction as to the burden of the tax, we first considered in Hammond whether or not the federal estate tax was a "debt" within the meaning of the election statute and con-

2. Citing: In re Heringer's Estate, 38 Wash.2d 399, 230 P.2d 297, 300; 47 C.J.S. Internal Revenue § 776, p. 1016; 28 Am.Jur. 136, Inheritance, Estate and Gift Taxes, Sec. 279; Annotation 142 A.L.R. 1137. For a later annotation, listing cases following rule, see 37 A.L.R. 2d 169.

3. According to CCH Federal Estate and Gift Tax Reporter, par. 2490.16, twenty-two states had statutes dealing with apportionment of federal estate taxes as of July, 1963. The earliest enactment was in New York in 1930. (N.Y.Laws c. 709 (1930), Decedent Estate Law, McKinney's Consol.Laws, c. 13, § 124). The most recent is Michigan in 1963, Pub.Acts 1963, No. 144. In Missouri, apportionment statutes have been before the General Assembly, but have not been enacted. Senate Bill No. 3, 69th General Assembly (1957); Senate Bill No. 190, 70th General Assembly (1959). An outline of a recommended statute for Missouri is to be found in Powell, Ultimate Liability for Federal Estate Taxes, W.U.L.Q., Dec. '58, 327, 345.

cluded that it was not. Finding no other state statute which applied, we concluded that equitable principles should be applied in determining the extent of the estate tax burden to be borne by the widow. We considered to what, if any, extent the widow's ultimate burden of the tax should reflect the fact that, because of the marital deduction, property received by her did not "cause or contribute to the amount of the federal estate tax on her decedent spouse's estate." 347 S.W.2d 1. c. 891. In this connection, we considered the object of the marital deduction, stating: "The marital deduction was enacted along with changes in the law as to income taxes and gift taxes, in an attempt to provide or to enable states to provide for equality in taxation among the residents of community-property states and noncommunity-property states." 347 S.W.2d 1. c. 886. We recognized that Congress had not attempted to specify who should bear the ultimate burden of the federal estate tax or who should receive the benefit of the tax saving attributable to the marital deduction. "Although the share of the surviving spouse is subject to the lien and the tax must be paid out of the estate as a whole, the federal statute leaves it to the states to determine how the tax burden shall be distributed among those who share in the taxed estate." Fernandez v. Wiener, 326 U.S. 340, 345, 66 S.Ct. 178, 181, 90 L.Ed. 116. In conclusion, we stated (347 S.W.2d 1. c. 893):

"Inasmuch as there was and is no statute applicable to this case and no judicially pronounced rule of which we are aware, which bars or is inconsistent with the application of equitable principles in determining the question in this case, and inasmuch as the basic principle of equitable apportionment was recognized and applied in Carpenter v. Carpenter, supra, and inasmuch as it seems to us to be inequitable and

grossly unjust to require a surviving spouse to pay a portion of the federal estate tax on the deceased spouse's estate solely by reason of the fact that the surviving spouse receives a statutory share of the estate which is not taxed and the receipt of which share does not cause or contribute to cause any part of the tax, we are of the opinion in this case that the renouncing widow's share of her deceased husband's estate should be received by her undiminished by any charge for federal estate tax except by that part of the federal estate tax allocable to that portion of her deceased husband's property received by her which formed part of his taxable estate."

Neither party to this case differs with the conclusion which we reached in the Hammond case. The appellants, however, insist that changes in the applicable statutes upon enactment of the 1955 Probate Code have provided the legislative direction, found lacking in Hammond, and that the burden of the tax must follow such legislative direction. They assert that principles of equitable apportionment applied in Hammond, can, under the probate code, no longer be applied in a case such as this.

The 1955 Probate Code became effective January 1, 1956. Laws of Mo.1955, p. 385, Sec. 1. The election statute of that code, which was in effect on May 19, 1957, the date of the death of R. Irl Jones,[4] provided, in part as follows (Laws of Mo.1955, p. 465, Sec. 252, Section 474.160 RSMo 1955 Supp.):

"When a married person dies testate as to any part of his estate, a right of election is given to the surviving spouse solely under the limitations and conditions herein stated:

"(1) The surviving spouse, upon election to take against the will, shall receive

---

4. There is no difference of opinion between the parties here upon the application in this case of the election statute and other provisions of the 1955 code as they stood at the date of the testator's death. See Owen v. Riffie, Administrator, Mo.Sup., 323 S.W.2d 765; Annotation, 129 A.L.R. 871. The 1957 amendments of the code (Laws of Mo.1957, p. 829), assuming the validity of the emergency clause of the amendatory act, because effective June 12, 1957. Id., p. 860.

in addition to exempt property and the allowance under section 135 one-half of the estate if there are no lineal descendants of the testator; or, if there are lineal descendants of the testator, the surviving spouse shall receive one-third of the estate;

"(2) When a surviving spouse elects to take against the will he shall be deemed to take by descent, as a modified share, such part of the estate as comes to him under the provisions of this section, and shall take nothing under the will. * * *"

As originally introduced in House Bill No. 30 of the 68th General Assembly, the word "net" appeared before the word "estate" where it appeared in subparagraphs (1) and (2) of section 252. In addition, the phrase "net estate" was defined by section 2(24) of the bill in its original form, as follows: "Net estate refers to the real and personal property of a decedent exclusive of exempt property, the allowance under section 135 and enforceable claims against the estate."

The phrase "net estate" was likewise employed, in the original version of the bill, in section 236, the statute of intestate succession. The section originally read, in part, as follows:

"The net estate of a person dying intestate descends and shall be distributed, subject to the payment of debts, as follows:

"(1). To the surviving spouse, one-half of the net estate;

"(2). * * *."

In the course of its passage, House Bill No. 30 was amended by deleting the definition of "net estate" from section 2, by deleting the word "net" where it had appeared before the word "estate" in section 252, and by rewriting section 236, in the form in which it presently appears, in part, as follows (Sec. 474.010, V.A.M.S.):

"All property as to which any decedent dies intestate shall descend and be distributed, subject to the payment of claims, as follows:

"(1) The surviving spouse shall receive:

"(a) One-half thereof if the intestate is survived by issue, father, mother, brother or sister, or their descendants;

"(b) All thereof if the intestate is not survived by issue, father, mother, brother or sister, or their descendants."

This legislative history is, we feel, significant in our search for a legislative direction on the burden of the estate tax which, under the 1955 Probate Code, would preclude the application of the principle of equitable apportionment, employed in Hammond. The language "net estate" is quite similar to that which the courts in other jurisdictions have found sufficient to preclude equitable apportionment of the federal estate tax, particularly in situations such as those covered by section 252, in which the surviving spouse elects to take against the will. Those cases were reviewed at some length in Hammond, and we will not again consider them in detail here. However, it is interesting to note that the phrase "net estate" was the exact statutory language relied upon by the Wisconsin Supreme Court in the case of In re Uihlein's Will, 264 Wis. 362, 59 N.W.2d 641, 38 A.L.R.2d 961, as precluding the court's application of the equitable apportionment principle in the case of a widow's renunciation of her husband's will.[5]

5. We would point out that Wisconsin, prior to the Uihlein case, had rejected the principle of equitable apportionment. In re Will of Kootz, 228 Wis. 306, 280 N.W. 672. In several other instances, jurisdictions which have rejected the equitable apportionment principle in computing the estate tax on the share of a widow who renounced her husband's will, had previously rejected the principle in other situations in which it might have been applied. Thus, the Illinois Court of Appeals, in Northern Trust Co. v. Wilson, 344 Ill.App. 508, 101 N.E.2d 604, re-

In addition, as pointed out above, in amending section 252, no language was inserted in the 1955 enactment, as was done in the general descent section (Sec. 236), making the share of the electing spouse subject to the payment of claims. Had such express language been included in section 252, we might well have had a different problem to consider, in view of the statutory definition of the term "claims" in section 2(3) as including "all estate and inheritance taxes."

That these changes and omissions were made with problems of estate and inheritance taxes in mind is borne out by the editorial comment which appears in Vol. 25, V.A.M.S., p. 153, following section 472.010 (Section 2 of the original bill), as follows:

"A definition of 'net estate' was included in the bill as originally introduced and the general descent provision (474.010) as well as the renunciation of will section (474.160) used the term. Because of its possible effect on the determination of estate or inheritance taxes it was removed by legislative amendment."

Certainly, the removal from the election statute of a provision which might well have been considered sufficient to fix the thrust of the federal estate tax (In re Uihlein's Will, supra), must evidence a legislative purpose to avoid such effect.

Some further light in this regard is shed by the General Assembly's subsequent addition in 1957 (Laws of Mo.1957, p. 829, 853) of the phrase "subject to the payment of claims" in section 474.160, the election statute, so that the share of the electing spouse is described now as follows:

"(1) The surviving spouse, upon election to take against the will, shall receive in addition to exempt property and the allowance under section 474.260 one-half of the estate, subject to the payment of claims, if there are no lineal descendants of the testator; or, if there are lineal descendants of the testator, the surviving spouse shall receive one-third of the estate, subject to the payment of claims; * * *".

By the same bill, section 472.010, the definition section, was amended (Laws of Mo. 1957, p. 831) by deleting the words "all estate and inheritance taxes", formerly included in defining the word "claims". Here again, we have a demonstration of the awareness on the part of the legislature of the potential impact upon estate tax liability of language used by it, particularly as the estate tax liability of a spouse who elects to take against a will might be affected. The continued inclusion of the words "All estate and inheritance taxes" in the definition of the term "claims" might, again, well have provided a legislative direction regarding the burden of the tax.

jected equitable apportionment on the tax on the share of a widow who took against the will. However, the Supreme Court of Illinois had previously rejected the principle in the case of First National Bank of Chicago v. Hart, 383 Ill. 489, 50 N.E.2d 461. Likewise, the West Virginia Supreme Court of Appeals which, in Guaranty National Bank v. Mitchell, 144 W.Va. 828, 111 S.E.2d 494, declined to apply the principle as to the estate tax on the share of a renouncing widow, had previously adhered to the "burden on the residue" rule in a case in which apportionment had been sought. Cuppett v. Neilly, 143 W.Va. 845, 105 S.E. 2d 548. Similarly the North Carolina Supreme Court, rejecting the principle in Wachovia Bank and Trust Co. v.

Green, 236 N.C. 654, 73 S.E.2d 879, had previously applied the rule of "burden on the residue" in the cases of Buffaloe v. Barnes, 226 N.C. 313, 38 S.E. 2d 222, and Craig v. Craig, 232 N.C. 729, 62 S.E.2d 336. By contrast, the Court of Appeals of Indiana, which had previously applied the principle of equitable apportionment in other situations (Pearcy v. Citizens Bank & Trust Co., 121 Ind.App. 136, 96 N.E.2d 918, 98 N.E.2d 231), recently, in the case of Seymour National Bank v. Heideman, 133 Ind. App. 104, 178 N.E.2d 771, applied the principle of equitable apportionment in the case of an electing spouse who was, under the Indiana statute, entitled to one-half of the "net estate" of the decedent.

See *Northern Trust Co. v. Wilson*, 344 Ill. App. 508, 101 N.E.2d 604.

In view of the foregoing, we must conclude that there is not to be found in section 474.160, as it appeared at the death of R. Irl Jones, any such legislative direction as would preclude the application of the same rule of equitable apportionment as was applied in the Hammond case.

The appellants urge, however, that other provisions of the 1955 Probate Code enter into the picture and supply the legislative direction regarding the burden of the estate tax. They contend that under subparagraph (2) of section 474.160, the electing spouse takes by *descent* and that we should, therefore look to the general descent statute (Sec. 474.010), under which, intestate property descends, "subject to the payment of claims", which were, in turn, as of May 19, 1957, defined to include "all estate and inheritance taxes" (Section 472.010 RSMo 1955 Supp.).

Subparagraph (2) of section 474.160, provides:

"When a surviving spouse elects to take against the will he shall be deemed to take by descent, as a modified share, such part of the estate as comes to him under the provisions of this section, and shall take nothing under the will."

The appellants' argument overlooks the first sentence of section 474.160, reading as follows: "When a married person dies testate as to any part of his estate, a right of election is given to the surviving spouse *solely under the limitations and conditions herein stated: * * *.*" (Emphasis ours.) This language is quite explicit that the electing spouse looks to the election statute and not elsewhere for her rights in her deceased spouse's estate Otherwise, the language emphasized has no meaning, a result to be avoided, if possible. In re Tompkins' Estate, Mo.Sup., 341 S.W.2d 866. In addition, subsection (2) of Sec. 474.160, relied upon by appel-

lant, expressly refers to "such part of the estate as comes to him *under the provisions of this section * * *.*" Such language would appear to preclude reference to another statute as the source of the electing spouse's taking.

The appellants would place the major significance on the fact that, by the terms of 474.160(2), the electing spouse takes by "descent", thereby making the taking referable to the general descent statute (Sec. 474.010). However, the significance of the use of this term was clearly explained by the committee which drafted the 1955 Probate Code. In discussing this provision, the Final Report of the Joint Probate Laws Revision Committee to the 68th General Assembly (1955), stated (p. 148–149; 26 V.A.M.S., p. 543):

"The first sentence of the section and subdivision (2) are from section 32 of the Model Probate Code. The reason for such subdivision (2) is given in the Model Probate Code as follows: 'Subdivision (2) is inserted to eliminate a prolific source of litigation. Much difficulty has arisen under some election statutes in determining whether the share which the surviving spouse takes against the will is taken as heir or in some other capacity. This problem has arisen in connection with the construction of devises "to heirs" and in statutes in which the word "heirs" is used with reference to inheritance taxes and many other matters. This subdivision specifically states that the surviving spouse takes by descent.' "

See Simes, Model Probate Code (1946), Sec. 32, p. 69.

This explanation demonstrates clearly that the object of this provision is to define the manner in which an electing spouse succeeds to the interest in the property which she receives. It merely describes the quality of the estate and does not make the spouse a taker under the statute of descent rather than the election

statute. The provision is wholly consistent with other provisions of the probate code, by virtue of which a surviving spouse may be an "heir" (section 472.010, subd. 14, V.A.M.S.). However, a surviving spouse who elects to take against the will, becomes an "heir" who takes under the election statute, not the general intestate statute. Even under a statute which provided that the election of the surviving spouse should be "whether to take under the will or under the statute of descent and distribution" (Gen.Code, § 10504–55), an election was held not to place the spouse under the operation of the descent and distribution law. Miller v. Miller, 129 Ohio St. 230, 194 N.E. 450. We are of the opinion that the use of the phrase "take by descent" in Sec. 474.160(2) does not mean that an electing spouse takes under the descent and distribution statute, rather than the election statute.

█ Appellant attaches significance to the fact that Sec. 474.190, V.A.M.S., in prescribing the form of election, refers to an election to take the "legal share in the estate", such language having been employed in the instrument of election in this case. Appellants argue that the words "legal share" are used in this connection in contradistinction to "equitable share" and that, therefore, no equitable rules or principles may be employed in determining such share. Actually, all that this provision does is to prescribe the form which the notice of election to take against the will shall take. Section 474.160 has already defined the nature and scope of the interest of the electing spouse. Section 474.190 merely prescribes the language to be employed in making known the desire to accept the benefits provided by Section 474.160, and in no manner is intended to detract from the measure of the share provided in 474.160. None of the cases cited by appellants dealt with language employed in a situation such as this. In the case of Weinberg v. Safe Deposit and Trust Company, 198 Md. 539, 85 A.2d 50, 37 A.L.R.2d 188, there is passing reference to the election by the widow to take "her legal share of the estate". However, no significance is given this language in the opinion of the court. Actually, the decision in that case turned on construction of the Maryland apportionment statute (Md.Ann.Code Art. 81, Sec. 162). The existence of that statute is what precluded the application of equitable apportionment, not the fact that the widow elected to take "her legal share of the estate".

We also note appellants' argument that in the case of Owen v. Riffie, Administrator, Mo.Sup., 323 S.W.2d 765, this court stated: "It may be conceded that the distributive share of the surviving spouse who elects to take against the will under the provisions of section 474.160 was and is limited to the net estate, both prior and subsequent to its amendment in 1957." Appellants' contention is that, if such is the case, the net estate must be determined by first deducting, among other deductions, the estate tax from the gross estate. In the Owen case, the question before the court was whether or not an election under 474.-160 precluded homestead for the electing spouse, under section 474.290. We concluded that the electing spouse was entitled to homestead. We were not considering the problem here presented, where we are attempting to ascertain whether or not there existed in May, 1957, a legislative direction on apportionment of estate tax on the share of the electing spouse. We pointed to no statute in Owen which expressly provided that the share of the surviving spouse should be of the net estate and none was to be found. We could, in a proper case, which is not likely to arise now in view of the 1957 amendment to section 474.160, expressly making the share of the electing spouse subject to claims (newly defined), decide whether or not any debts or obligations of the decedent should have been deducted prior to the 1957 amendment of 474.160. We were not, however, actually called upon to decide the question in Owen, nor are we here. Certainly, our language in Owen cannot furnish the *legislative* di-

rection which must exist, under the Hammond case, if the doctrine of equitable apportionment is not here to be applied.

According to the stipulation of facts upon which this matter was presented to the circuit court, if the marital deduction had been computed on the basis of the tax apportionment which we have here approved, the estate tax would have been $10,768.43 less than the amount actually paid. The appellants urge that Josephine Jones should be charged with one-half of this "overpayment".

In states having apportionment statutes, the rule generally followed is that the tax to be apportioned is the tax actually paid. Hale v. Leeds, 28 N.J. 277, 146 A.2d 216, In re Buckhantz' Estate, 120 Cal.App.2d 92, 260 P.2d 794; Annotation, 37 A.L.R.2d 199, 250. The reasoning behind the rule is stated: "The task of proration begins at the point when the taxing authorities end their duty of fixing the estate tax; it takes the accomplished fact of taxation and then prorates the burden of the actuality of the tax." In re Buckhantz' Estate, supra, 260 P.2d l. c. 797. In addition, under apportionment statutes, the apportionment proceeding is generally a separate proceeding from the administration of the estate. Liability of executors or administrators for erroneous payment of tax is, therefore, not determinable in such proceedings, but must be established in proceedings to surcharge the executor's account. Hale v. Leeds, supra, 146 A.2d l. c. 216.

This case, while involving apportionment as the primary question, is actually a proceeding pertaining to the executors' settlement. Therefore, the nature of the proceeding would not preclude an inquiry into responsibility of the executors for overpayment of the tax, at least as to the parties here involved. However, in her brief, respondent states that she is not asserting any claim against the executors based upon mismanagement of the estate. In view of that position, we need inquire no

further into the question of the executors' responsibility for the overpayment.

■ However, we perceive no reason which would support the executors' position that one-half of the overpayment should be borne by the widow. Why should she share a greater burden of the tax not owed than of the tax which should have been paid? The executors have paid out a sum of money in payment of the estate tax assessed against the estate. Our problem is to determine what portion of such payment should be chargeable to the respondent. In view of all of the circumstances of this case, including the fact that the law pertaining to apportionment had not been clearly established at the time of payment, and in further view of the fact that the widow, at such time, had urged the apportionment of her share of the tax, we have concluded that the widow should share in the overpayment in the same proportion as the tax allocated to the property received by her in excess of her maximum marital deduction bears to the tax which would have been owed on the basis of the apportionment which we have approved. According to the stipulation, the pro-rata share of the widow of the tax was $8,664.40, and the tax actually owed $117,026.35. Applying this proportion to the overpayment, the widow's share thereof is $797.27.

■ The executors also urge that we should, in this proceeding, order that they be credited for one-half of the profit to the estate resulting from the collection, subsequent to the filing of the final settlement, of $3,000.00 on a note that had been inventoried at $1.00. This money having been received subsequent to the filing of the final settlement, this question should be presented to the probate court under Sec. 473.600.

The judgment of the circuit court will be modified by a reduction in the amount owed respondent by the widow's share of the "overpayment" of the estate tax, or $797.27, so that the amount owed by the executors will be $52,067.90, and, as modi-

fied, the judgment of the circuit court is affirmed as of the date of the original judgment.

All concur, except EAGER, C. J., who dissents.