398 F.Supp. 87 (1975)
UNITED STATES of America, Plaintiff,
v.
Gene J. MELMAN, guardian, et al., Defendants,
v.
W. Donald DUBAIL, Administrator, et al., Third-Party Defendants.
No. 73C 729 (2).
United States District Court, E. D. Missouri, E. D.
June 30, 1975.
*88 Donald J. Stohr, U. S. Atty., David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
Phillip J. Paster, Blumenfeld, Kalishman, Marx, Tureen & Paster, Clayton, Mo., for defendants Gene J. Melman and Geri Gussie Melman.
Frederick O. Hanser, Fordyce, Mayne, Hartmen, Renard, Stribling & Boedeker, *89 St. Louis, Mo., for defendant Clayton Federal Savings & Loan Association.
Stanley H. Sicher, Allan F. Stewart, Clayton, Mo., for third-party defendant Florence Melman.
J. Dennis O'Leary, W. Donald Dubail, Dubail, Judge, Kilker & Maier, St. Louis, Mo., for third party defendant W. Donald Dubail.
James J. Amelung, St. Louis, Mo., for third party defendants Sale, Campbell and Evans, Wilbur Sale and Arthur F. D. Evans.
Weber & Lipsitz, St. Louis, Mo., for third party defendants Philip Melman and Ann C. Field.

MEMORANDUM AND ORDER
REGAN, District Judge.
This is an action to foreclose a federal estate tax lien against a certificate of deposit (No. 2VF 7490) issued by defendant Clayton Federal Savings and Loan Association in the name of defendant Gene J. Melman, Guardian of the Estate of Geri Gussie Melman, a minor. Geri Gussie is the daughter of Gene. Together, they filed a third-party complaint against W. Donald Dubail, Administrator cum testamento annexo de bonis non of the Estate of Sam Melman, Jr., Deceased, Ann C. Field, Philip Melman, Florence Melman and Wilbur A. Sale, David L. Campbell and Arthur F. D. Evans, attorneys at law doing business as Sale, Campbell & Evans, praying judgment against the third-party defendants for reimbursement or contribution for all sums that may be adjudged in favor of plaintiff against the third-party plaintiffs.
Sam Melman, Jr. died November 1, 1967. A federal estate tax of $29,820.21, together with an addition to the tax under Section 6651(a), 26 U.S.C., in the amount of $1,491.02 was duly assessed against Sam's estate and notice and demand for payment was made. No part of the tax has been paid. At the time of his death there was in effect an insurance policy on Sam's life issued by the Equitable Life Assurance Society of the United States in the amount of $17,500 in which Geri Gussie Melman was the named beneficiary. Thereafter, the proceeds of the policy were paid to Gene J. Melman, as Guardian of his daughter and he invested $17,000 of the proceeds in the certificate of deposit at issue.
The value of the life insurance policy was properly included in the gross estate of the decedent inasmuch as he had retained the right to change the beneficiary, and thus possessed one of the incidents of ownership. Section 2042(2), 26 U.S.C.; Nance v. United States, 9 Cir., 430 F.2d 662; Fernandez v. Wiener, 326 U.S. 340, 363, 66 S.Ct. 178, 90 L.Ed. 116; Singer v. Shaughnessy, 2 Cir., 198 F.2d 178, 181. As part of the gross estate, the policy was subject to a lien in favor of the Government for a period of ten years from November 1, 1967. Section 6324, 26 U.S.C.; United States v. Cleavenger, D.C.Ind., 325 F. Supp. 871, appeal dismissed, 7 Cir., 483 F.2d 1406. Inasmuch as the certificate of deposit was purchased with the proceeds of the policy, the Government lien attached to the certificate. Section 6324(a)(2), 26 U.S.C. It follows that the Government is entitled to foreclose its lien against the certificate. And since the federal estate tax exceeds the value of the certificate of deposit, an order will be entered directing that the certificate be converted into cash and paid to plaintiff in satisfaction of its lien.
We turn next to the third-party claims, all of which are based on Section 2205, 26 U.S.C.[1] The major controversy *90 relates to the third-party claims against Florence Melman and her former attorneys, Sale, Campbell and Evans. As to those claims the portion of Section 2205 relied on by third-party plaintiffs provides that a person from whom any part of the tax is collected is entitled to "a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate."
Surviving decedent were his widow, Florence J. Melman, and two children by a previous marriage, Gene J. Melman, and Melva Shanker. Decedent and Florence had entered into an antenuptial agreement dated November 30, 1957, whereby in consideration of the marriage agreement Florence agreed to accept a stipulated sum ($50,000) and waive all rights in Sam's estate. On the premise that the antenuptial agreement was invalid, Florence filed an application for exempt property, family allowance and homestead allowance, as well as an election to take against the will. If, as contended by her, the antenuptial agreement was void, Florence would have been entitled to a family allowance and the exempt property and to a one-third interest in Sam's estate.
Sale, Campbell and Evans represented Florence in her endeavors to void the antenuptial agreement and to obtain a larger share of the estate. Gene J. Melman, Burnett Schwartz (Sam's attorney) and Max L. Raskin (Sam's accountant were executors of the estate (without bond), and as such they contested Florence's right to disavow the antenuptial agreement or to obtain a greater interest in the estate than permitted thereby. In addition there were controversies between Florence and the executors, particularly as related to the handling of the probate estate and the assets thereof.
Ultimately, a settlement was arrived at on September 16, 1969, and approved by the probate court, as the result of which the probate court granted Florence a family allowance of $25,000 and a homestead allowance of $7,500. She was also permitted to take against the will. However, Florence's distributive interest in the estate pursuant to such election was to be satisfied by an immediate payment to her of $25,000 in cash (inclusive of the homestead allowance), a note for $58,000 payable in 29 consecutive monthly installments of $1,000 each (commencing October 16, 1969) with a final installment of $29,000 due March 16, 1972, together with a used Lincoln automobile which had been inventoried at $2,545. Thus, by reason of the settlement as approved by the probate court Florence was to receive $108,000 in cash and the automobile. Of the cash, $50,000 ($25,000 family allowance, and $25,000 on account of Florence's distributive share, inclusive of the homestead allowance) was paid upon approval of the settlement, and $22,000 was thereafter paid to her at the rate of $1,000 a month, the last such payment having been made July 16, 1971.
It appears from the annual settlements filed in the probate court by the executors that as of the time they settled the controversies with Florence, the gross assets in Sam's estate exceeded $830,000. And the annual settlement filed by the executors in January, 1971 showed a balance in the estate in excess of $750,000 (after Florence and her attorneys had received payments of $66,000). A settlement to the resignation of Burnett Schwartz and the death of Max L. Raskin reflects a balance of $751,223.25, *91 after additional payments aggregating $6,000 had been made to Florence and her attorneys. It is thus apparent, on the evidence of record, that had Gene and his co-executors paid the estate tax when it should have been paid, neither the amounts paid to Florence and her attorneys nor her interest in Sam's estate would have been reduced.
Even if, as argued by third-party plaintiffs, the liquid assets were insufficient to have paid the estate tax, the fact remains that other (non-liquid) assets could have been sold, if necessary for that purpose. And the mere fact that the assets of the estate may not now be sufficient to reimburse Geri's estate for the taxes which will be paid out of the insurance proceeds does not mean that had the tax been paid when it should have been, the estate would not have had funds with which to pay Florence.
Third-party plaintiffs further argue that they are entitled to contribution from Florence on the premise that her interest in Sam's estate is subject to equal or prior liability for the payment of the tax, that is, that the interest of Florence is subject to the same 10 year lien as that asserted against the insurance proceeds. We do not agree. Section 6324(a)(1), 26 U.S.C., which creates the special lien upon the gross estate, expressly excepts therefrom "such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration."
In this connection, third-party plaintiffs virtually concede, as they must, that the $25,000 family allowance and the $7,500 homestead allowance would be exempt from any federal estate tax liabilities, but contend, without amplification, that different considerations apply to the remaining $42,045 in assets received by Florence pursuant to the settlement. Under Missouri law, family and homestead allowances are unquestionably "charges" against the estate "exempt from all claims against the estate." Sections 474.260 and 474.290 V. A.M.S. As for the additional allowance to Florence under the settlement in satisfaction of her distributive share in the estate, it is clearly something other than the statutory share ("one-third of the estate, subject to the payment of claims," Section 474.160 V.A.M.S.) which a surviving spouse receives upon election to take against the will. The executors were required to pay Florence a fixed amount absolutely, without regard to the total value of the estate or the amount of allowed claims. In this situation, we consider the $42,045 as an expense of administration. Even the statutory share to which a spouse electing to take against the will is entitled is not, under Missouri law, subject to the payment of estate taxes except as to any property received in excess of the amount of the marital deduction. Jones v. Jones, Mo., 376 S.W.2d 210.
It must not be overlooked that the claims under consideration are not by the government, but concern only equities as between individuals sharing in the gross estate with respect to the ultimate liability to pay the tax. Missouri is firmly committed to the doctrine of "equitable apportionment" of federal estate taxes. See Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632; Hammond v. Wheeler, Mo., 347 S.W.2d 884; Jones v. Jones, Mo., 376 S.W.2d 210, and In re Estate of Wahlin, Mo.App., 505 S.W.2d 90. Florence relies on that doctrine, pointing out (1) that in the federal tax returns filed after the settlement was approved, a marital deduction of $110,545 was taken (that being the total to be received by Florence), resulting in a substantial reduction of the estate tax and (2) that no part of the money or property received (or to be received) by Florence generated any part of the tax.
Third-party plaintiffs do not dispute the foregoing but insist that the liability of Florence is founded on federal law (Section 2205) and not on Missouri law. However, the Missouri cases take Section 2205 (and its predecessor statute) into consideration, holding that Section *92 2205 merely determines the "initial" method of paying the tax but not where the "ultimate liability" for the tax rests. And that is what was held in Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, construing the predecessor to Section 2205.
In arguing for liability on the part of Florence, third-party plaintiffs ignore the statutory words "just and equitable contribution". Is it "just and equitable" to require the surviving spouse to contribute to the payment of a tax although no part of the share of the estate received by her causes or contributes to cause any part of the tax? In our judgment it would be unjust and inequitable. The Missouri doctrine of equitable apportionment is wholly consistent with the Section 2205 concept that a distributee is liable only for a "just and equitable" contribution. Under the evidence, Florence is entitled to judgment on the third-party claim.
Third-party defendants Sale, Campbell and Evans, acted at all relevant times solely as attorneys for Florence. Section 2205 speaks of a contribution by persons having an interest in the estate. These third-party defendants never had nor claimed to have any interest in Sam's estate. They were named as payees jointly with Florence in payments made to Florence under the settlement agreement, not by reason of any independent entitlement to such payments, but simply to protect their rights to the attorneys' fee owed to them by Florence for services rendered to her. And since, as we have held, third-party plaintiffs are not entitled to a contribution from Florence, it necessarily follows that none is owing by her attorneys.
Insofar as concerns the third-party claim against the administrator c. t. a. d. b. n., that is grounded on the provision of Section 2205 entitling a person from whom any part of the estate tax is collected to reimbursement "out of any part of the estate still undistributed." It follows from the express statutory language that upon receipt by the government of the proceeds of the certificate of deposit, third-party plaintiffs will be entitled to reimbursement therefor out of any part of the estate then still undistributed subject, of course, to the lien of the government thereon for the balance of the estate tax and to all charges, costs and expenses of administration having priority.
We have been cited to no factual or legal basis whatsoever for the third-party claim against Philip Melman. Philip had a claim against Sam's estate which was duly allowed, and the payments to him were on account of the allowed claim. Section 2205 has no application whatever to distributions to creditors.
This leaves only the third-party claim against Ann C. Field for consideration. Ann, a sister, is a legatee under Sam's will. Whatever interest she has in the estate is subject to the payment of the tax. And the will expressly mandates that the tax be paid out of the general assets of the estate, so that as between Geri and Ann, it would be just and equitable to require contribution by Ann to the extent of estate assets which may have been distributed to her. However, the burden of proving such a distribution was upon third-party plaintiffs, and in our judgment such burden was not sustained. The only testimony relating to the alleged distribution is that of Gene Melman. He testified that because his aunt (Ann) was in need of money, she was paid the sum of $500. The date of the alleged payment is not disclosed, and Gene conceded that he did not have (or at least could not find) either a receipt or a cancelled check for the payment. He offered no evidence whatever corroborative of the fact of payment. There is no contention that any such payment was authorized or approved by the probate court. In this situation, we may infer that if at some time Gene paid his impecunious aunt the sum of $500 such *93 payment was a personal one by him and not an estate distribution.
The foregoing memorandum constitutes our findings of fact and conclusions of law. Judgment will be entered in accordance herewith.
NOTES
[1] "If the tax or any part thereof is paid by, or collected out of, that part of the estate passing to or in the possession of any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this chapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution."