NEIL A. McMILLAN et al., Trustees under Will of
GEORGE D. BARNARD, v. BARNARD FREE
SKIN & CANCER HOSPITAL et al., Appellants.

In Banc, July 31, 1924.

1. **WILL: Construction: Intention: Renunciation by Widow.** The
intent of the testator, as gathered from the whole will and all
its parts, determines its meaning and controls its construction.
And where his widow has renounced the will, the provisions made
for her must be considered in connection with all its other provis-
ions for the purpose of ascertaining his intention.

2. ———: **Trust Estate: Deficit in Income Given to Beneficiaries: Sup-
plied from Reserve Fund.** After making special bequests to em-
ployees and relatives, the testator in the ninth clause of his will
bequeathed and devised all the rest and residue of his estate to
certain trustees, with full power to hold, manage and administer
"the trust property vested in them." In the tenth clause he di-
rected that "out of the income received" by the trustees "from
the property devised and bequeathed to them under the ninth
clause, said trustees shall pay" two thousand dollars per month to
his wife and named monthly or annual amounts to numerous des-
ignated beneficiaries. In the eleventh clause he declared that in
case the annual income from the trust estate created under the
ninth clause "should be insufficient to pay all the annual bequests
in full, after the payment of the two thousand dollars per month

to my wife, then the balance of such annual income for that particular year shall be distributed *pro rata* among the other beneficiaries to whom annual payments are made, but any deficiency in such annual payments in any particular year shall not be made good out of the income of any succeeding year." In the twelfth clause he directed that "all the rest and residue of the income from my estate received by said trustees, and not required for the payment of specific annual or monthly bequests for that particular year, saving and excepting a certain reserve fund, provisions for which are hereinafter made, shall be paid to" a named hospital, the defendant, and then declared: "I desire that the board of trustees shall establish what shall be known as a 'reserve fund' and that this reserve fund shall be established in the following manner: Out of the annual income received from my estate by the trustees, and not required for the payment of monthly or annual bequests for that particular year, the board of trustees shall deduct each year from such income a sum not exceeding ten thousand dollars per year before making any payment to said hospital as in this clause provided" and "these reservations shall be made from year to year until the reserve fund shall equal the sum of one hundred thousand dollars, and only what is left after setting aside the reservation for each year of such a sum as is herein provided to become a part of the reserve fund shall the trustees pay over to such hospital. . . . The reserve fund may be used by the board of trustees for the purpose of meeting unexpected expenses; and, should there be any year in which the income shall be insufficient to pay the monthly or annual bequests for that particular year, the same may be met and paid out of this reserve fund, and this may be repeated as often as it occurs." The wife renounced the will, and elected to take one-half of the estate. The reserve fund was created in the manner provided by the will until it amounted to fifty thousand dollars, but in 1922 the income was not sufficient to pay even as much as one-half of the designated monthly and annual bequests. *Held, first,* that the trustees were authorized to use so much of the accumulated reserve fund as was necessary to make up the deficit in the annual income and thereby to pay the bequests in full; *second,* the payment of the monthly and annual bequests was mandatory, and the hospital had no interest in the reserve fund until they were paid; *third,* the reserve fund is created by segregating the net income for each particular year, but when so segregated it does not go directly to the hospital, but is to be used (a) to meet unexpected expenses of administration and (b) to pay the deficiency in monthly and annual bequests for any particular year; and, *fourth,* a discretion is given to the trustees as to whether they will set aside in any particular year the full ten thousand dollars to the reserve fund.

McMillan v. Barnard Free Skin & Cancer Hospital.

*Held*, by DAVID E. BLAIR, J., dissenting, that the provision in the eleventh clause of the will that "in case the annual income . . . should be insufficient to pay all annual bequests in full, . . . then . . . such annual income for that particular year shall be distributed *pro rata* among the beneficiaries to whom annual payments are made, but any deficiency in such annual payments in any particular year shall not be made good out of the income of any succeeding year" precludes a holding that deficiencies should be made up from the reserve fund, which would be but an indirect way of making up deficiencies out of the income of succeeding years.

3. ———: ———: ———: ———: **Primary Purpose: Fat and Lean Years.** The primary purpose of said will was to provide (a) a monthly payment of two thousand dollars to testator's wife, and next (b) the payment of the monthly and annual bequests to the other beneficiaries named, and (c) to create a reserve fund to be used (1) in meeting any unexpected expenses of the trustees in administering the estate and (2) in paying the balance due on the monthly and annual bequests when the income for any particular year was insufficient to pay them in full, and (d) if the income for a particular year exceeded the amount of all the preferred bequests, as much as ten thousand dollars of the excess was to be set aside to said reserve fund, and the balance, if any, was to be turned over to the hospital; and the widow having renounced the will, the other bequests became first demands upon the annual income and upon the reserve fund after unexpected expenses of administration were met; and by thus creating the reserve fund the testator meant that provision should be made in fat years to meet the insufficient income of lean years—that inadequate income to pay the bequests in any one year was to be made up out of the reserve fund accumulated in former years. [DAVID E. BLAIR and WOODSON, JJ., dissenting.]

4. ———: **The Word May: May Mean Shall.** The meaning of language must be determined from the whole instrument in which it is used; and in this case the word "may" used in the clause of the will declaring that "the reserve fund may be used by the board of trustees for the purpose of meeting unexpected expenses; and, should there be any year in which the income shall be insufficient to pay the monthly or annual bequests for that particular year, the same may be met and paid out of this reserve fund" was used in the sense of "shall" or "must." [DAVID E. BLAIR and WOODSON, JJ., dissenting.]

Headnotes 1 to 4:   Wills: 1, 40 Cyc. 1414;   2, 40 Cyc. 1798;   2 and 3, 40 Cyc. 1799;   4, 40 Cyc. 1398.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

AFFIRMED.

*Allen C. Orrick* for appellant.

(1)  The real intention of the testator, as gathered from the whole will, is the controlling rule for the construction of wills.  Cox v. Jones, 229 Mo. 53; Lane v. Garrison, 293 Mo. 530.  (2)  It is also the law that words in a will must be given their ordinary meaning and grammatical construction, unless it is manifest from the whole instrument that they were used in a different sense.  Meiners v. Meiners, 179 Mo. 614.  (3)  The word "may," as applied to the use of the reserve fund, is permissive and not mandatory.  State ex rel. v. Blair, 245 Mo. 680, 693; President v. Miller, 5 Johns. Ch. (N. Y.) 101; Northwestern Traveling Men's Association v. Crawford, 126 Ill. App. 468, 266 Ill. 57; Davies v. Dovey, 85 S. W. (Ky.) 725; McIntyre v. McIntyre, 16 Atl. (Penn.) 783; In re Ellis, 203 Pac. (Wash.) 957; Ellis v. Aldrich, 70 N. H. 219.  (4)  In the clause, relating to the building up of the reserve fund, the testator uniformly uses the word "shall," while in the clause relating to the use of the reserve fund he uniformly uses the word "may."  These clauses occur in the same paragraph of the will, and clearly show that the testator understood the difference between the words "shall" and "may," and that, when he used the word "may," he meant "may" and not "shall."

*Eliot, Blayney, Bedal & Eliot, Lewis & Rice* and *George C. Hitchcock* for respondents.

(1)  The real intention of the testator, as gathered from the whole will, is the controlling rule for the construction of wills.  Sec. 555, R. S. 1919.  (2)  The word "may" when used in a written instrument is ordinarily

construed as vesting a discretion. However, it may be construed to be mandatory, thus giving it the force of "shall" whenever such construction is necessary to carry out the intent of the author of the instrument, whether a testator, legislature or contractor. This construction is most often resorted to if the rights of third persons or of the public depend on the exercise of the power or the performance of the duty to which the word "may" refers. Ellis v. Aldrich, 70 N. H. 219; Deming v. Metropolitan Eng. & Const. Co., 154 Mo. App. 540; Supreme Council Catholic Benev. Legion v. Grove, 176 Ind. 356; Williams v. Williams, 236 S. W. (Tenn.) 938. (3) The word "may" as used by testator in the clause of his will relating to the use of the reserve fund was not intended by him to vest a discretion and should be construed to have the effect of "shall" so as to make it the duty of the trustees to use the reserve fund upon the happening of the contingencies specified by the will.

*Jourdan, Rassieur & Pierce* also for other respondents.

(1) The controlling rule, of course, is that it is the duty of the court to ascertain the testator's real intention as such intention may be gathered from the whole will. Lane v. Garrison, 293 Mo. 530. (2) If it is apparent that the testator intended, in case of a deficit in annual income for any year, that the reserve fund should be resorted to to make good such deficit and pay the annuities in full, then other technical rules of construction will be disregarded and the word "may" will be construed as mandatory, the same as "shall" or "must." Ellis v. Aldrich, 70 N. H. 219; Deming v. Metropolitan Eng. & Con. Co., 154 Mo.App. 540; Nichols v. Boswell, 103 Mo. 151, 160. (3) It is not contended by appellant that the trustees were not empowered to pay the deficit out of the reserve fund. Appellant claims that a discretion is vested in the trustees whether they

should or should not do so. The trustees did not decide that the reserve fund should not be used—they brought this proceeding, asking for advice and direction in the premises, and the court by its decree has so advised and directed. Therefore the decree should stand, unless it was erroneous, for the court under the circumstances so to advise. (4) But even if the trustees had decided that the deficit should not be met out of the reserve fund, the court could properly order them to do so. Only $12,920.87 is required to make up the deficit. Fifty thousand dollars was lying in the reserve fund for just such a contingency. There was no evidence to indicate that any unexpected expenses were anticipated, therefore, no apparent need for the use of the fund except to take care of the deficit. Under the circumstances, if the trustees had decided that the deficit should not be met out of the reserve fund, their conduct would have amounted to an abuse of discretion, if discretion in that regard were vested in them, and such abuse may be corrected by the court. 28 Am. & Eng. Enc. Law (2 Ed.) 991; 2 Perry on Trusts (6 Ed.) sec. 511a; Collister v. Fassett, 163 N. Y. 281; In re Hodges, L. R., 7 Ch. Div. 754.

GRAVES, C. J.—Plaintiffs are the trustees of a trust estate created by the last will and testament of the late George D. Barnard of the city of St. Louis. Barnard died May 31, 1915, leaving an estate estimated at $2,000,000. He left no children. His will made provision for his wife, but she elected to take under the law and not under the will. The administration of the estate closed long since, and the trust estate created by the will is now, and from 1917 has been, in the hands of a board of trustees created by the will. As said, this board of trustees constituted the plaintiffs herein. The defendants constitute all the beneficiaries in this trust estate. The board of trustees, having reached a point where they could not pay all the annuities out of the income of the estate for the year ending May 31, 1922,

brought this suit for the interpretation of the will, or rather certain portions of the will. The residuary beneficiary of the estate is the Barnard Free Skin & Cancer Hospital, which is an institution (purely charitable) established by Mr. Barnard. The will provided for the creation of a "reserve fund" to be raised by taking $10,000 or less each year from the net income of the trust estate. When the annuities became due for the year 1922, there was $50,000 in this trust fund. By the term annuities, we include all payments to be made out of the income of the estate, whether they be annual, semi-annual or monthly. These charges upon the net income of the estate amounted to $22,650, in 1922, and the trustees had but $9729.13 with which to pay, unless they had power to go to this reserve fund. The trial court in its decree ruled as follows on this disputed question:

"The court doth further find that it was the intention of testator in creating each and all the annuities mentioned in testator's will to provide for the payment of each and every annuity without priority or preference one over the other in respect to the annual amount received by each annuitant by reason of the fact that in some instances testator provided that said annuities should be paid 'annually,' 'semi-annually,' 'monthly' or 'per month;' and that said testator, by the eleventh clause of his will, in providing that in the event of a deficit of income in any one year the income should be prorated among annuitants, intended that all annuitants should be placed upon the same basis and participate ratably in any funds available for distribution.

"The court doth further find that in and by the twelfth clause of testator's will testator directed the trustee of said trust estate to establish a 'reserve fund' as therein provided, and that in and by said twelfth clause specifically limited the use to which said reserve fund may be placed, as follows:

" 'The reserve fund may be used by the board of trustees for the purpose of meeting unexpected expenses,

304 Mo.—41.

and should there be any year in which the income shall be insufficient to pay the monthly or annual bequests for that particular year, the same may be met and paid out of this reserve fund, and this may be repeated as often as it occurs, and any depletion so occasioned in said reserve fund may be made up as is hereinabove authorized.'

"The court doth further find that at the end of the fiscal year ending May 31, 1922, said reserve fund amounted to fifty thousand dollars; that the amount payable on account of all bequests and annuities mentioned in testator's will for the year ending May 31, 1922, was $22,650, but that the total income received during said fiscal year, available for the payment of said annuities or bequests, was only $9,729.13, leaving a deficit for said fiscal year between the amount of annuities then payable and the amount of income applicable thereto of $12,-820.87. The court doth further find that it was the intention of testator in establishing said reserve fund to assure all the various beneficiaries of the trust, established by said testator's will, the payment of their respective annuities in full in the event there should be a deficit in any particular year, provided, further, that, in the judgment of said trustees, said reserve fund was not needed for the payment of 'unexpected expenses' during such year, or reasonably anticipated for the ensuing year."

From this portion of the decree the Barnard Free Skin & Cancer Hospital has appealed. It is the only appellant which completed an appeal. Portions of certain named paragraphs in the will become pertinent. One of our learned Commissioners has culled these out, thus:

Paragraph 11 reads:

"In case the annual income from the trust estate herein created under Clause Nine of this, my last will and testament, should be insufficient to pay all of the annual bequests in full, after the payment of the two thousand dollars per month to my wife, then the balance of

such annual income for that particular year shall be distributed *pro rata* among the other beneficiaries to whom annual payments are made, but any deficiency in such annual payment in any particular year shall not be made good out of the income of any succeeding year; and providing further that none of the payments from the income of said trust estate shall begin until the expiration of one year from and after my death, excepting payments to my wife of the two thousand dollars per month, which shall date and begin from the date of my death, being payable monthly each month from and after the date of my death.''

Paragraph 12 reads in part:

''All the rest and residue of the income from my estate received by the said trustees, and not required for the payment of specific, annual or monthly bequests for that particular year, saving and excepting a certain reserve fund, provisions for which are hereinafter made, shall be paid to the Barnard Free Skin & Cancer Hospital, of St. Louis, Missouri, for the support and maintenance of said hospital, and, when necessary, for all repairs, taxes and expenses in connection with the maintenance of said hospital and the keeping of the same in thorough condition, and, if deemed advisable by the board of trustees, a portion of said income may be used for the extension and enlargement of said hospital, provided, however, that not over five thousand dollars in any one year of said income is to be used in what is known as 'research work' or applied to what is known as the 'research department.' ''

Here follow minute directions in the event the present charter of the hospital should be extended or a new corporation should be incorporated under the same name for the same purpose, covering nearly four pages of the abstract. The paragraph concludes:

''I desire that the board of trustees shall establish what shall be known as a 'reserve fund' and that this reserve fund shall be established in the following man-

ner: Out of the annual income received from my estate by the trustees, and not required for the payment of monthly or annual bequests for that particular year, the board of trustees shall deduct each year from such income a sum not exceeding ten thousand dollars per year before making any payment to the said hospital as in this clause provided. The fund so set aside shall be and become part of what shall be known as a 'reserve fund' and these reservations shall be made by the board of trustees from year to year until the reserve fund shall equal the sum of one hundred thousand dollars and only what is left after setting aside the reservation for each year of such a sum as is herein provided to become a part of the reserve fund shall the trustees pay over to said hospital. When the reserve fund shall have reached the sum of one hundred thousand dollars no further reservations shall be made on account of the creation of said reserve fund, saving and excepting that whenever the total amount in the reserve fund shall fall below the sum of one hundred thousand dollars then and thereafter the trustees are authorized and empowered to make further reservations from the net income applicable to be paid to the said hospital under the provisions of this will; it being my purpose and intention that the trustees shall be at all times authorized and empowered to keep said reserve fund unimpaired to the extent of one hundred thousand dollars. The reserve fund may be used by the board of trustees for the purpose of meeting unexpected expenses; and, should there be any year in which the income be insufficient to pay the monthly or annual bequests for that particular year, the same may be met and paid out of this reserve fund, and this may be repeated as often as it occurs, and any depletion so occasioned in said reserve fund may be made up as is hereinabove provided and authorized.''

Paragraph 16 empowers the trustees to sell or dispose of at any time any of the trust property for reinvestment, to alter, change and rebuild any improvement

on any of the trust property, to improve vacant property, to lease real estate belonging to the trust estate, and concludes:

"The said trustees are authorized and directed to pay all taxes, insurance, repairs, expenses of maintaining and protecting the property, embraced in said trust estate, and also all of the charges and expenses arising out of, or connected with, the management and control of said trust estate. It is my purpose and desire and my intention to confer upon my said trustees full discretion as to the wisest management of the property embraced in said trust."

It is admitted that the trustees, after the payment of the annuities, have accumulated a reserve fund of $50,000, by setting aside $10,000 from each year's income from the trust estate, as directed by the will, which sum has been invested in Liberty bonds, and that they have never taken any action with reference to the use of said fund.

If other portions become material in the course of the opinion, we will note them at the proper places. This outlines the case.

I.   The key-stone of construction in determining the meaning of any will is the intent of the testator. This intent must be gathered from the whole will. The instrument must be read and considered as a whole in determining the intent and purpose as the testator has attempted to express such intent and purpose in divers portions of the instrument. When the intent of the testator is found, the proper construction of the will is solved. The intent may be buried beneath a mountain of verbiage, but when once found, all troubles arising under the will vanish. Our statute, now Section 555, Revised Statutes 1919, bespeaks this rule. [Cox v. Jones, 229 Mo. l. c. 61 et seq.; Lane v. Garrison, 293 Mo. l. c. 537.]

*Intention.*

There are divers rules spoken of in the books used as aids in attempting to find the intent of the testator. Many of these are outlined by LAMM, J., in the Cox Case, supra.

The character of the will in a little more detail should be stated. The first clause made his wife and the St. Louis Trust Company executors. By the second clause provision is made for the wife, but as she renounced the will, such clause is only for consideration in trying to get the intent of the testator. By clauses three, four, five, six and seven he makes a large number of money bequests, some evidently to relatives and old employees. Even in a codicil he adds two more former employees. By clause eight he gives one share, each of the stock of Geo. D. Barnard & Co. so that the persons so designated can qualify as directors of such company. By the ninth clause of the will "all the rest, residue and remainder of my estate, real, personal and mixed" is devised to a number of persons, who are designated as trustees of the trust created by the will. These he speaks of as "said board of trustees" and they are given full power as to the property conveyed to them. The details are not material. Up to this point the testator was dealing with conveyances (so to speak) of his property. But from this point on, the testator having conveyed the bulk of his property to trustees, and having created a trust estate, the testator begins to deal with the income of the estate as it is managed by his trustees. Theretofore he was dealing with his property. But from paragraph ten on he is dealing largely with the net income of the trust estate. First he provides for $2,000 per month for the wife. Such provision was also made in paragraph two of the will, at which place some specific legacies were given to her. This paragraph ten is long, but in it is a long list of bequests made to relatives and institutions (churches and charitable), which bequests are from the net income of the trust estate, and these payments are made mandatory

Outline of Will.

by the words used. We quote a short bequest as a sample of them all, thus:

"Said board of trustees, out of the income arising from said trust estate, shall annually pay to the Provident Association of St. Louis, the sum of one thousand dollars, to be sent in as my contribution to the said charity."

In the long list are relatives of himself and wife to whom are given monthly or annual allowances, but the general form is as above. Other portions of the will we have more fully outlined in the statement of the case. From them all, however, it is made to appear that the appellant herein is the residuary legatee of the net income of the trust estate. But of this matter more fully later. We now have at least an outline of the applicatory facts, and the applicatory rules of construction.

II. One important question is to get at the status of appellant (Barnard Free Skin & Cancer Hospital) with reference to the "reserve fund" which is to be kept at the $100,000 point. The trustees **Use of Reserve** "*shall establish*" this fund. At least **Fund to Pay** they "*shall establish*" this reserve fund, **Annual Bequests.** and *shall* deduct from the income each year until it reaches $100,000, and if it should fall below that sum (after once reaching $100,000) "then and thereafter the trustees are authorized and empowered to make further reservations from the net income applicable to be paid to the *said hospital* under the provisions of this will; it being *my purpose and intention* that the trustees shall be at all times authorized and empowered to keep said fund unimpaired to the extent of one hundred thousand dollars."

To fully grasp this language we must consider that the net income of the estate was first to be applied to the payment of the wife's $2,000 per month, during her life, then next came these annuities, then the reservations for the "reserve fund," and then the residue of the net in-

come went to appellant, if there was a residue. Although the wife renounced the will, we must, in getting at the testator's intent, consider all its provisions, including those as to the wife. The appellant has no interest in the trust fund, although it was created by income money which might have gone to appellant but for the "reserve fund" provision. The "reserve fund" is a part of the net income, but when once segregated, it can never go directly to appellant. When any part of the income goes in to the "reserve fund," it can only be paid out for two purposes, (1) for meeting unexpected expenses, and (2) for the payment of monthly and annual bequests for any given year, wherein the income of the year is insufficient to meet these bequests. Neither of these purposes apply to appellant. The "unexpected expenses" clearly has reference to expenses in running the trust estate, and not to expenses of any particular beneficiary of the trust. Such a provision seemingly expresses a clear intent to protect these bequests to relatives, employees, and the other charities named, before the interest of this appellant was to be cared for by the trust estate income. Such is the usual situation of a residuary legatee. [Woerner's Am. Law of Administration, p. 1544.] This will evinces no evidence of an intent by the testator to, in the least degree, forego the rights of these first-named legatees in the interest of this appellant. And, it occurs to me that the provision as to the "reserve fund" expresses an intent upon the part of the testator for his board of trustees not only to establish, but to maintain a "reserve fund" of $100,000, to be devoted to the two express uses therein named. I think however, that the wording of the provision is such that there is a discretion in the trustees, as to whether they set aside the full sum of $10,000 per year to the "reserve fund." The language used is "the board of trustees shall deduct each year from such income a sum *not exceeding* Ten Thousand Dollars ($10,000) per year before making any payment to the said hospital as in this

clause provided." Just prior, in this clause, is the direction to pay these annual and monthly bequests, before taking the portion for the "reserve fund." It is this situation which shows the clear intent to make this appellant purely a residuary legatee, and these other bequests positively previous and mandatory demands upon the net income, whether it be the net income for the particular year, or whether, in case of a deficiency for any particular year, it be the net income garnered in this reserve fund. When we say that appellant has no interest in this reserve fund, we mean no direct financial interest. It is interested in the correct application of the reserve fund, and in seeing that there is no waste therein, because a proper application thereof ultimately will insure increased income to appellant.

III.  We have shown, supra, that all these monthly and annual bequests to relatives and others were mandatory, and not permissive. In each case the testator

Primary Purpose.
says: "Out of the income from said trust estate, the board of trustees *shall pay,*" etc. There is the emphatic command to pay these bequests out of the income of the trust estate.

In the will the only person having prior claims was the wife, who was allowed $2,000 per month out of the income, to be paid to her regardless of what might happen to other legatees under the income of the trust estate. Her renunciation of the will, leaves these other monthly and annual bequests in the position of first demands upon the income. These payments are made mandatory and not merely permissive. The board of trustees *"shall pay"* is the language of the testator, and *"shall pay"* out of the net annual income. There can be no question about these mandates. But the testator did not stop there. It occurred to him that something might happen, which would render the net annual income of a certain year insufficient to meet the monthly and annual demands, so he provided that in the fat

years provision should be made for the lean years, and. hence the trust fund provision. The creating of this fund was made mandatory, if there was net income out of which the reservations could be made, after the payment of the monthly and annual bequests. Its preservation was provided for, so that these payments could be made out of net income in lean years. The net income would be such as had been saved for the purpose in the reserve fund. The testator further foresaw that the income might fail when there was no "reserve fund" on hand, and hence a provision to divide what net income there was *pro rata* in such an emergency. The testator has undertaken to provide for any and all contingencies, and in so doing the alleged confusion occurs.

But to the idea we had in mind in beginning of this paragraph. The payment of these monthly and annual charges upon the yearly net income is mandatory. The creation and maintenance of a reserve fund to take care of deficiencies is mandatory, and the use of the word "may" in the latter portion of clause twelve of the will, does not change the mandatory obligation theretofore expressed. The command was to pay out of net income, and this command is good whether the net income is that of the particular year, or in the "reserve fund" created for the lean years. The command is to pay out of net income no matter where the trustees found net income. I have no doubt of this being the intent of this testator.

IV. It has been suggested that the term "unexpected expenses" used in connection with the expenditure of the reserve fund has reference to expenses of the hospital. The twelfth clause of the will, in the first portion thereof does say something about the expenses of the hospital, but this language is not used in connection with the reserve fund, but has reference solely to the annual residue of the net income. The words used are:

Unexpected Expenses.

"All the rest and residue of the income from my estate received by the said trustees, and not required for the payment of specific, annual or monthly bequests *for that particular year,* saving and excepting *a certain reserve fund,* provisions for which are hereinafter made, shall be paid to the Barnard Free Skin & Cancer Hospital, of St. Louis, Missouri, *for the support and* maintenance of said hospital, and *when necessary, for all repairs, taxes and expenses* in connection with the maintenance of said hospital and the keeping of the same in thorough condition, and, if deemed advisable by the board of trustees, a portion of *said income* may be used for the extension and enlargement of said hospital, provided, however, that not over five thousand dollars in any *one year of said income* is to be used in what is known as "research work" or applied to what is known as the "research department."

It is clear that this language has reference solely to such annual payments as the hospital might receive from the annual net income. It is dealing with this income, and when it speaks of hospital expenses, it has reference to expenses which might be paid out of this annual residuary income. The expenses spoken of in that portion of the clause dealing with the "reserve fund" has reference solely to expenses of operating the trust property as we have stated, supra.

The appellant plants its case upon the use of the word "may" as used in the last sentence of clause twelve, which reads:

"The reserve fund *may be used* by the board of trustees for the purpose of meeting *unexpected expenses;* and, should there be any year in which the income shall be insufficient to pay the monthly or annual bequests for that particular year, the same *may be met* and paid out of this reserve fund, and *this may be repeated as* often as it occurs, and any depletion so occasioned in said reserve fund may be made up as is hereinabove provided and authorized."

The meaning of language must be determined from the whole instrument wherein it is used. It is clear to my mind that when the whole instrument is considered the word "may" is used in the sense of "shall." It is said that these monthly and annual allowances *shall* be paid out of the income. It is further said that this "reserve fund" *shall* be created out of the income. Why give these mandates, if after the fund was created under mandatory directions, the trustees could use their own sweet discretion about using this income, preserved in the reserve fund, to discharge those mandatory obligations upon the income of the trust estate? The very connections in which the word is used indicates the sense of "shall." The word "may" is used likewise in connection with "unexpected expenses." Suppose there occurred "unexpected expenses," does it look reasonable to rule that the testator meant that his trustees should use their own sweet will in discharging such unexpected expenses, or did he mean that if you have unexpected expenses, and the income will not meet them, then to preserve the trust property, you *must* use this reserve fund to meet the obligations? The latter occurs to me to be the reasonable construction, when the instrument as a whole is considered. When this testator said to his trustees you shall pay these monthly and annual bequests out of net income, he meant that they must be paid, and if his trustees did not have sufficient annual net income to meet them, then they must go to the net income which had been husbanded in the "reserve fund" for that purpose, and go as often as occasion requires. We shall not discuss the cases ruling upon the meaning of the word "may" in the divers connections in which it has been found. In all cases its meaning has been controlled by the context of the whole instrument wherein it was used.

So doing in this case, it is clear that the decree of the learned circuit judge is correct, and it is therefore affirmed. All concur, except *David E. Blair* and *Woodson, JJ.*, who dissent, *David E. Blair, J.*, in opinion filed.

DAVID E. BLAIR, J. (dissenting).—I am unable to concur in the majority opinion. If testator had intended to make it mandatory upon his trustees to pay deficiencies out of the reserve fund, he would doubtless have so expressed his intention in paragraph 11 of his will, which is set out in the majority opinion. He was there dealing with the subject of deficiencies in income for the payment of annuities. He there provided that, if the annual income should be insufficient to pay all of the annual bequests in full (after the payment to his wife), then the balance of such annual income for that particular year should be distributed *pro rata* among the other beneficiaries. Here was the place to provide, if testator intended so to provide, that the deficiency should under all circumstances be made up from the reserve fund, at least so far as it would go. But he did not so provide, but instead provided for a *pro rata* reduction.

This view is further fortified by the provision in the same paragraph that such deficiencies should not be made good out of the income of any succeeding year. To make up deficiencies out of the reserve fund is but an indirect way of making good such deficiencies out of the income of succeeding years, for it then became necessary to make good to the reserve fund in succeeding years any amounts withdrawn therefrom to meet deficiencies in payments of annuities.

It seems to me that the mandatory requirement to make up such deficiencies was not laid upon the trustees, but that testator left it to their sound judgment and discretion so to do if so advised. I am unable to escape this conclusion if full effect is given to paragraph 11 and the word "may" be taken in its ordinary meaning. This is especially true since testator frequently used the word "shall" when he plainly intended to make mandatory provisions.

For these reasons, I respectfully dissent.