In re ESTATE of Carl Albin WAHLIN, Deceased.

Edith M. BELL and Blanche M. McAuliffe, Executrix of the Estate of Doris Hamilton, Deceased, Appellants,

v.

Edith M. BELL, Executrix of the Estate of Carl Albin Wahlin, Deceased, et al., Respondents.

No. KCD 26219.

Missouri Court of Appeals, Kansas City District.

Dec. 31, 1973.

———◆———

Thomas A. Hartley, Kansas City, for appellants.

Roy P. Swanson, Milton C. Clarke, Kansas City, for respondent, Shriners Hospitals for Crippled Children; Swanson, Midgley, Eager, Gangwere & Thurlo, Kansas City, of counsel.

William B. Bundschu, Kansas City, for Edith M. Bell, executrix-respondent.

Francis L. Roach, Kansas City, for Kansas City Association for the Blind.

W. Hugh McLaughlin, Kansas City, for The Masonic Home of Missouri.

Allan W. Stopperan, Kansas City, for First Lutheran Church of Kansas City.

Carl A. Hummell, Kansas City, for The Children's Mercy Hospital.

Howard A. Crawford, Kansas City, for Gillis Home for Children.

Bernard Craig, Kansas City, for St. Joseph's Orphan Home for Girls.

Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This litigation arises from polemical positions taken by individual residuary legatees (who were also recipients of non-probate property) and charitable residuary legatees as to where the final burden of the federal estate tax generated by decedent's estate (probate and non-probate) should rest.

There are two issues involved on appeal: FIRST, should the charitable residuary legatees be completely exonerated from the impact of the federal estate tax; and SECOND, should the individual residuary legatees, who were also joint owners with decedent of certain non-probate property and one thereof was the beneficiary of certain insurance, be liable for contribution respecting the federal estate tax to the extent such jointly owned property and insurance generated the tax. The individual residuary legatees (sometimes hereinafter referred to as appellants) assert the negative as to both issues and the charitable residuary legatees (sometimes hereinafter referred to as respondents) assert the affirmative.

A verbal montage of the facts, proceedings and lower court rulings best explains the posture of this case on appeal.

Carl Albin Wahlin (hereinafter referred to as testator) died testate on May 9, 1970, and his last will and testament was duly admitted to probate by the Probate Court of Jackson County, Missouri, and letters testamentary were issued to his sister Edith M. Bell.

Those portions of testator's last will and testament pertinent to the issues on appeal are:

(1) Article I directed "expenses of my last illness and funeral, and all my just debts, be paid as soon after my death as legally and conveniently possible";

(2) Article III was a specific bequest (and the only specific bequest contained in the will) of two items of personal property having a combined value at the time of testator's death of $644.00 "to my good friend, Miss Doris Hamilton";

(3) Article IV bequeathed "All of the rest, residue and remainder" of testator's estate as follows:

(a) Twenty-five percent (25%) to testator's "beloved sister, Mrs. Edith M. Bell";

(b) Twenty-five percent (25%) to testator's "good friend, Miss Doris Hamilton";

(c) Twenty-five percent (25%) to the Masonic Shrine Crippled Children's Hospital at St. Louis, Missouri;

(d) Five percent (5%) to the First Lutheran Church; 30th and Benton Blvd., Kansas City, Missouri;

(e) Four percent (4%) to The Missouri Masonic Home for the Aged;

(f) Four percent (4%) to the Kansas City, Missouri, Home for the Blind;

(g) Four percent (4%) to the St. Joseph Orphan Home for Girls, Kansas City, Missouri;

(h) Four percent (4%) to the Gillis Home for Children, Kansas City, Missouri;

(i) Four percent (4%) to Children's Mercy Hospital, Kansas City, Missouri;

(4) Article V provided that in the event testator's sister, Edith M. Bell, predeceased testator, "I then give that part of my estate (25%) which she would have received under this will, to my good friend, Miss Doris Hamilton";

(5) Article VI provided that in the event Doris Hamilton predeceased testator, "I then give that portion of my estate which she would have received under this will, as an additional amount to the Masonic Shrine Crippled Children's Hospital at St. Louis, Missouri."

Testator's total gross estate for federal estate tax purposes amounted to $281,227.-39, consisting of probate property valued at $155,663.86 and jointly owned property and insurance valued at $125,563.53.

Edith M. Bell, sister of testator, and one of the individual residuary legatees, was surviving joint tenant of non-probate property valued at $57,383.49 and beneficiary of insurance valued at $5,147.58. Doris Hamilton, the other individual residuary legatee, was surviving joint tenant of non-probate property valued at $63,032.46. Funeral expense, expenses of administration, debts of testator and specific bequests totaled $22,549.97. Subtraction of $22,549.97 from $155,663.86 left a residuary estate of $133,113.89. The shares of the charitable residuary legatees, for the purpose of determining the total "charitable deduction" to be claimed in determining testator's net taxable estate for federal estate tax purposes, were computed on the basis of what each percentage charitable bequest bore to $133,113.89, resulting in a total "charitable deduction" of $66,556.96. The net federal estate tax determined to be owed with respect to testator's net taxable estate, on the basis of claiming $66,556.96 as the total "charitable deduction", amounted to $29,445.11. Parenthetically, appellants claim that the net federal estate tax (generated by both probate and non-probate property) due with respect to testator's net taxable estate should be charged to and payable out of the residuary estate of $133,113.89 before calculating the distributive shares of the charitable residuary legatees.

The executrix of testator's estate filed a petition to construe the will of decedent in the Probate Court of Jackson County, the gist of which was to determine the intent of testator as to where the ultimate burden of the federal estate tax should lie. The individual residuary legatees, in response

thereto, asserted, essentially, that the intent of testator as disclosed by his will, as well as certain federal and state statutes, compelled payment of the net federal estate tax, whether generated by probate or non-probate property, from probate assets before the net residuary estate for distribution purposes was computed. The charitable residuary legatees, in response thereto, asserted, essentially, that the judicial doctrine of equitable apportionment controlled since testator's will failed to reveal any intent, express or implied, as to who should bear the ultimate burden of the federal estate tax, and, accordingly, additionally asserted that the charitable bequests should not be burdened or diminished by any part of the net federal estate tax, and that such tax should be charged solely to and prorated between the individual residuary legatees, surviving joint owners of non-probate property and individual beneficiaries of insurance.

Certain peripheral facts touching the issues are: deceased was never married, both parents predeceased him, and he had no brothers or sisters, except Edith M. Bell, who survived him and was his only heir at law; testator was seventy-six years old at the time of his death and Edith M. Bell was eighty years old at the time of testator's death; Doris Hamilton, "good friend" of testator was fifty-seven years old at the time of testator's death and had been acquainted with him for more than twenty-five years; testator had been interested generally in charities, had been a member of the Ararat Shrine since 1917, and had been active in the affairs of the Shriners Hospital for Crippled Children; Doris Hamilton died while the instant case was pending on appeal and the executrix of her estate has been substituted as a party in her stead.

The Probate Court of Jackson County, in its order construing testator's will, ruled " . . . the decedent's will fails to reveal any intent, expressed or implied, as to which legatee should bear the burden of the federal estate tax assessed against the

decedent's estate" and further ruled that the entire federal estate tax should be charged to Edith M. Bell and Doris Hamilton (the two individual residuary legatees and recipients of all the non-probate property) "in proportion as property and insurance proceeds received by them, . . ., comprises the decedent's taxable estate for federal estate tax purposes." The individual residuary legatees appealed the order of the probate court to the Circuit Court of Jackson County. The judgment entered by the Circuit Court of Jackson County construing testator's will, among other things, held, "That the decedent's will fails to reveal any intent, expressed or implied, as to which legatees should bear the burden of the Federal Estate tax assessed against decedent's estate" and, "That no part of the Federal Estate tax payable by the executrix should be charged to or reduce any of the legacies payable to any of the aforesaid charitable legatees, but the entire Federal Estate tax on decedent's estate should be charged to and recovered from the legacies of Edith M. Bell and Doris Hamilton in proportion to the property that each receives from the proceeds of life insurance, from property which was jointly owned with decedent and from the net probate estate" and that the executrix was authorized and directed to seek contribution from Edith M. Bell and Doris Hamilton to effect the judgment.

The individual residuary legatees postulate reversal of the circuit court judgment on numerous grounds as to both issues. As to the FIRST issue, their brief contains two points, Point I consisting of eight sub-points and Point II consisting of three sub-points. It is patently obvious that as to the FIRST issue the two principal points and the eleven respective sub-points constitute a farrago that can be distilled and aptly posed by three questions. Is there any federal mandate contained in the sections comprising 26 U.S.C.A., Chapter 11, Estate Tax, viewed singularly or collectively, that requires the charitable residuary legatees to pay part of the federal es-

tate tax assessed against testator's estate, thereby precluding application of the judicial doctrine of equitable apportionment? Do Sections 473.397(3), 473.620, 473.623, 474.430, RSMo 1969, V.A.M.S., viewed singularly or collectively, constitute legislative direction, or an expression of legislative intent, that the charitable residuary legatees must bear part of the federal estate tax assessed against testator's estate, thereby precluding application of the judicial doctrine of equitable apportionment? When construed according to established and applicable principles, does testator's will disclose an intent on his part as to where the ultimate burden of the federal estate tax assessed against his estate should fall, thereby precluding application of the judicial doctrine of equitable apportionment?

Before sequentially answering the three questions posed, and to put discussion of them in proper perspective, it appears appropriate to review the background, underlying rationale and meaning of the judicial doctrine of equitable apportionment urged by respondents herein as applicable and controlling of the issues, but urged by appellants as being inapplicable and non-controlling.

Prior to 1942 a widespread belief prevailed in various state courts that the federal estate tax statutes evidenced an intent on the part of Congress that the burden of the federal estate tax was cast on the residuary estate. State courts prescribing this belief were categorized as enunciating the "general rule". In 1942 the Supreme Court of the United States, in Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, put the matter to rest by unmistakenably holding that "Congress intended that state law should determine the ultimate thrust of the tax". Riggs v. Del Drago, supra, made no distinction with reference to "state law", whether statutory or judicially decreed. The "general rule" that developed from the erroneous belief prevailing before Riggs v. Del Drago, supra, held

that in the absence of an apportionment statute or a testamentary provision to the contrary, the ultimate burden of the federal estate tax rested on the residuary estate. The Supreme Court of Missouri was confronted with the problem of fixing the ultimate burden of the federal estate tax in Carpenter v. Carpenter, 364 Mo. 782, 267 S.W.2d 632 (1954). In *Carpenter* the decedent's gross taxable estate for federal estate tax purposes included both probate and non-probate property (an annuity contract). The appellant in *Carpenter* pressed the court to adopt and apply the "general rule", the consequence of which would have fixed the burden of the federal estate tax on the residuary estate, even though part of the tax was generated by non-probate property. The respondents in *Carpenter* pressed the court to adopt and apply the judicial doctrine of equitable apportionment, the consequence of which would have prorated the burden of the federal estate tax among the recipients of both probate and non-probate property in such proportions as the amount of property each received contributed to the tax. The respondents prevailed. The court in *Carpenter* carefully reviewed the federal statutes (now 26 U.S.C.A. § 2002 and § 2205) imposing liability on the executrix to pay the federal estate tax from probate assets and determined that they prescribed only "the initial method of paying the tax", but not "the matter of the ultimate liability to pay the tax", and, therefore, the referred to federal statutes did not preclude the executrix from seeking contribution from the recipients of non-probate property which generated part of the tax. Additionally, the court in *Carpenter* rejected the "general rule" (sometimes referred to as the "burden on the residue" rule), and, recognizing that Missouri had no applicable statute, held that absent a clearly expressed intent on the part of a testator to the contrary, Missouri adopted and would apply the judicial doctrine of equitable apportionment in fixing the ultimate burden of the federal estate tax.

The Supreme Court of Missouri in Hammond v. Wheeler, 347 S.W.2d 884 (Mo. 1961), was again confronted with the problem of fixing the ultimate burden of the federal estate tax. In *Hammond* the surviving widow renounced the will of her deceased husband and elected to take her statutory share. The executors of the deceased husband's estate (appellants) contended that the federal estate tax was a "debt" of the estate within the meaning of "debt" as used in Section 469.090(2), RSMo 1949, which provided that the renouncing widow should receive "one-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts", and, therefore, the widow's elective share should be diminished by a proportionate share of the federal estate tax. Respondent, executor of the widow's estate (she having subsequently died), contended that the statutory share of the widow, to the extent of the marital deduction provided for in the federal estate tax law (now 26 U.S.C.A. 2056), should be undiminished by and bear no part of the federal estate tax burden. The respondent prevailed. In *Hammond* the court conclusively dispelled the contention that the federal estate tax was a debt of a decedent's estate, subscribed to and applied the judicial doctrine of equitable apportionment enunciated in Carpenter v. Carpenter, supra, and again conclusively rejected the often urged contention that the federal estate tax should ultimately be cast on the residuary estate unless the decedent's will directs otherwise. At page 893 of its opinion in *Hammond* the court drew all loose ends together and clearly articulated the rationale behind and the practical application of the judicial doctrine of equitable apportionment:

"Inasmuch as there was and is no statute applicable to this case and no judicially pronounced rule of which we are aware, which bars or is inconsistent with the application of equitable principles in determining the question in this case, and inasmuch as the basic principle of equitable apportionment was recognized and applied in Carpenter v. Carpenter, supra, and inasmuch as it seems to us to be inequitable and grossly unjust to require a surviving spouse to pay a portion of the federal estate tax on the deceased spouse's estate solely by reason of the fact that the surviving spouse receives a statutory share of the estate which is not taxed and the receipt of which share does not cause or contribute to cause any part of the tax, we are of the opinion in this case that the renouncing widow's share of her deceased husband's estate should be received by her undiminished by any charge for federal estate tax except by that part of the federal estate tax allocable to that portion of her deceased husband's property received by her which formed part of his taxable estate."

The Supreme Court of Missouri was again confronted with the problem of fixing the ultimate burden of the federal estate tax in Jones v. Jones, 376 S.W.2d 210 (Mo.banc 1964). In *Jones* the surviving widow renounced her deceased husband's will and elected to take the statutory share provided for in Section 474.160, RSMo 1955 Supp., to-wit: "one-half of the estate if there are no lineal descendants of the testator; or, if there are lineal descendants of the testator, the surviving spouse shall receive one-third of the estate." The executors of the husband's estate, appellants in *Jones*, contended that Section 474.160, supra, constituted legislative direction that the surviving widow's statutory share should bear its proportionate burden of the federal estate tax because the surviving widow, in effect, took by "descent" and property taken by "descent" was subject to the payment of "claims" as statutorily defined in Section 472.010, RSMo 1955 Supp. and "all estate . . . taxes" were included in the statutory definition of "claims". The court rejected the executors' contention that the renouncing widow took by "descent" and, perforce, rejected their ancil-

lary contention that her statutory share, by legislative direction, was diminished by a proportionate share of the federal estate tax. The court in *Jones* went to considerable length to carefully point out that legislative deletion of all "estate . . . taxes" from the statutory definition of "claims" contained in Section 472.010, supra, by amendment in 1957 (now section 472.010, RSMo 1969, V.A.M.S. as amended) demonstrated a lack of intent on the part of the legislature to direct where the final impact of the federal estate tax should rest. The surviving widow, respondent in *Jones* urged the court to apply the judicial doctrine of equitable apportionment and thereby insulate her statutory share from diminishment to the extent of her marital deduction. The respondent prevailed. The court in *Jones*, 1. c. 212, referring to Carpenter v. Carpenter, supra, stated, "We chose, in the Carpenter case, in the absence of any statutory provision or clearly expressed intention of the testator to the contrary, to reject the 'burden on the residue' rule, and to adopt, instead, the principle of 'equitable apportionment'", and held that the renouncing widow's statutory share stood undiminished by the federal estate tax.

▬ Carpenter v. Carpenter, supra, Hammond v. Wheeler, supra, and Jones v. Jones, supra, a trilogy of equitable apportionment, possess in common a premise that dominates throughout—absent statutory direction, or an expression of intent on the part of the testator to the contrary, broad equitable principles place the burden of the federal estate tax on the property which generates the tax and exonerates therefrom property which does not.

▬ Riggs v. Del Drago, supra, lays to rest any contention on the part of the individual residuary legatees that the sections comprising 26 U.S.C.A., Chapter 11, Estate Tax, singularly or collectively, constitute a federal mandate that the charitable residuary legatees herein must bear a part of the federal estate tax. As construed in Carpenter v. Carpenter, supra, 26 U.S.C.A. § 2002 and 2205, determine the "initial" method of paying the tax, but not where "ultimate liability" for the tax rests.

Attention next focuses on Sections 473.-397(3), 473.620, 473.623 and 474.430, RSMo 1969, V.A.M.S., for a determination of whether, singularly or collectively, they constitute an expression of state legislative intent that the charitable residuary legatees must bear part of the federal estate tax.

▬ Sub-section (3) of Section 473.397, RSMo 1969 V.A.M.S. (titled, "Classification of claims"), reads, in part, "All debts, including taxes, due the state or any county or incorporated city or town; and the executor or administrator shall pay all taxes without any claim therefor being presented to the court for allowance . . .". The individual residuary legatees argue that federal estate taxes fall within the statutory meaning of "debts" insofar as classification of claims is concerned, and, therefore, there is "no more reason to exonerate residuary legatees from federal estate taxes than to exonerate them from other debts and claims against the estate." When the Probate Code of 1955 was originally enacted, sub-section (1a) of Section 150, Laws 1955, p. 438 (titled, Classification of claims) included "Debts, including taxes, to the United States;" in the classification of claims. Also, when the Probate Code of 1955 was originally enacted, sub-section (3) of Section 2, Laws 1955, p. 390 (titled, "Definitions") included "all estate . . . taxes" in the statutory definition of "Claims". In 1957, sub-section (3) of Section 2, Laws 1955, p. 390 was amended Laws 1957, p. 831. The 1957 amendment deleted "all estate . . . taxes" from the statutory definition of "Claims" and as amended now constitutes Section 472.010, RSMo 1969, V.A.M.S. In 1965 Section 150, Laws of 1955, p. 438 (titled, Classification of claims) was amended, Laws 1965, p. 635. The referred to amendment deleted "Debts, including taxes, to the United States" from the classification of claims, obviously to

conform with the statutory definition of claims as amended by Laws 1957, p. 831, and as amended now constitutes Section 473.397, RSMo 1969, V.A.M.S. The 1957 amendment to present Section 472.010, RSMo 1969, V.A.M.S., and the 1965 amendment to present Section 472.397, RSMo 1969, V.A.M.S., intimate, singularly and collectively, a legislative intent to comport with the judicial doctrine of equitable apportionment espoused in Carpenter v. Carpenter, supra. In any event, the amendments referred to fail to contain even the slightest suggestion of legislative intent to limit, debilitate, or do away with the judicial doctrine of equitable apportionment. It is appropriate to point out that the Supreme Court of Missouri, in Jones v. Jones, supra, 376 S.W.2d l. c. 215, with reference to the 1957 amendment to present Section 472.010, RSMo 1969, V.A.M.S., very aptly stated, "Here again, we have a demonstration of the awareness on the part of the legislature of the potential impact upon estate tax liability of language used by it, . . . The continued inclusion of the words 'All estate and inheritance taxes' in the definition of the term 'claims' might, again, well have provided a legislative direction regarding the burden of the tax."

■ Section 473.620, RSMo 1969, V.A.M.S., is titled "Order in which assets are appropriated; abatement" with the following order statutorily prescribed, "(1) Property not disposed of by the will; (2) Residuary devises; (3) General legacies; (4) Specific devises." Section 473.623, RSMo 1969, V.A.M.S., is titled "Contribution between devisees." The individual residuary legatees vie that the aforementioned sections indicate a legislative intent to preclude application of the judicial doctrine of equitable apportionment. Section 473.623, supra, implements Section 473.620, supra, and provides that "When it is necessary under the provisions of section 473.620, that there be an abatement of specific devises" such abatement "will be borne . . . proportionately". Perforce, legislative intent precluding application of the judicial doctrine of equitable apportionment, if any, must be found in Section 473.620, supra. The legislative history of section 473.620, supra, was carefully traced and judicially construed in Reed v. United States, 316 F.Supp. 1228 (U.S.D.C., E.D. Mo.E.D.1970). In Reed, l. c. 1232, the court concluded, "There is not the slightest suggestion in the notes to the Model Code nor in the Committee Comment to Section 473.620, of any legislative intent to modify or otherwise affect the judicial doctrine of equitable apportionment." Additionally, in Reed, l. c. 1233, the court stated, "In our view, the purpose of Section 473.620 can be effectuated without abandoning or emasculating the doctrine of judicial apportionment. The section would come into effect only 'when it is necessary,' after the estate tax has theretofore been apportioned in accordance with the doctrine of equitable apportionment." This court ascribes to the reasoning contained in Reed and holds that Section 473.620, supra, does not indicate any legislative intent to preclude application of the judicial doctrine of equitable apportionment.

■ Section 474.430, RSMo 1969, V.A.M.S. (titled, Court to conform to directions of will), stands unamended since its original enactment in 1955. This section provides that courts construing wills "shall have due regard" for "the true intent and meaning of the testator". Suffice it to say, Section 474.430, supra, contains no expression of legislative direction, implicit or explicit, as to where the burden of the federal estate tax falls.

Concluding disposition of the FIRST issue includes construction of testator's will to ascertain whether he expressed an intent therein that the federal estate tax should be paid out of his residuary estate before calculating the distributive shares of the charitable residuary legatees.

■ In McMillan v. Barnard Free Skin and Cancer Hospital, 304 Mo. 635, 264 S.W. 410, 413 (banc 1924), the "keystone"

principle governing the construction of wills was expressed as follows: "The keystone of construction in determining the meaning of any will is the intent of the testator. This intent must be gathered from the whole will. . . . When the intent of the testator is found, the proper construction of the will is solved." Ancillary to this "keystone" principle are two attendant principles of major import, (1) a court may not reform an unambiguous will or import to the testator an intent not expressed in the will [Cockrell v. First National Bank of Kansas City, 357 Mo. 894, 211 S.W.2d 475 (1948)], and (2) if a will is unambiguous, auxiliary rules of construction cannot be resorted to [American Red Cross v. Hannibal Nat. Bank, 360 Mo. 297, 228 S.W.2d 679 (1950)].

It appears appropriate at this point to pause and reflect as to exactly what "intent" of testator, in the context of the issues in this case, is to be ascertained and determined from his will. In Jones v. Jones, supra, 376 S.W.2d l.c. 212, the "intent" of testator to be ascertained and determined was cogently stated: "We chose, in the Carpenter case, in the absence of any statutory provision *or clearly expressed intention of the testator to the contrary*, to reject the 'burden on the residue' rule, and to adopt, instead, the principle of 'equitable apportionment.' " (Emphasis added.) Thus, in the context of the issues in this case, testator's will must be judicially construed to determine whether it contained a "clearly expressed intention" on his part that the entire federal estate tax due with respect to his estate, (including both probate and non-probate property) was to be borne by his residuary estate before calculating the distributive shares of the residuary charitable legatees.

As heretofore pointed out the probate court ruled, "The decedent's will fails to reveal any intent, expressed or implied, as to which legatees should bear the burden of the federal estate tax assessed against decedent's estate", and the circuit court, by its judgment, held, "That the decedent's will fails to reveal any intent, expressed or implied, as to which legatees should bear the burden of the federal estate tax assessed against the decedent's estate." It appears beyond the pale of doubt that testator's will totally and completely failed to contain any expression of intent, express or implied, as to where the ultimate burden of the federal estate tax should fall, much less a "clearly expressed intention" that the burden of the tax should fall on the residuary estate before calculating the shares of the charitable residuary legatees.

The various federal and state statutes and some thirty-four cases and text authorities cited by the individual residuary legatees as authority for reversing the judgment of the circuit court regarding the First issue have been carefully studied and analyzed, with the resulting conclusion that they in no way afford the individual residuary legatees any appellate relief. At best, the various arguments tendered give rise to nothing more than speculative inferences regarding testator's intent. Determination of testator's intent from the four corners of his will necessarily involves more than weighting speculative inferences to determine on which side of the issue the greater weights falls. For every argument and speculative inference posted in favor of the individual residuary legatees as to testator's intent, equally compelling arguments and speculative inferences can be posted against them.

First, appellants argue that testator was presumed to know that the executrix of his estate was required to pay the federal estate tax out of the assets of his estate, 26 U.S.C.A. § 2002 and § 2205, and therefore "intended" that such tax should be paid before the distributive shares of respondents were computed. It may be argued, with equally compelling force, that testator was presumed to know that the charitable bequests constituted deductions in determining his net taxable estate (26 U.S.C.A. § 2055) and he therefore "intended" that the distributive shares of respondents were to be computed before his net taxable estate

was determined and therefore free from any burden of the tax.

Second, appellants argue that the words "rest, residue and remainder" contained in Article IV of testator's will limited all residuary legatees, including the charitable residuary legatees, to a percentage share of what remained in his estate after payment of the federal estate tax, specific bequests and other legal charges, thus raising an inference that testator "intended" for the distributive shares of respondents to be computed after the payment of and to be diminished by the amount of the federal estate tax. Equally compelling logic raises the inference that the words "rest, residue and remainder" disclosed an "intention" on the part of testator that the distributive shares of the charitable residuary legatees were to stand undiminished by the federal estate tax, since Carpenter v. Carpenter, supra, Hammond v. Wheeler, supra, and Jones v. Jones, supra, rejected the "burden on the residue" rule.

Third, appellants argue that it was testator's "intention" that each legatee entitled to a twenty-five percent share of testator's residuary estate, Edith Bell, Doris Hamilton, Masonic Shrine Crippled Children's Hospital at St. Louis, and, collectively, six separate charitable institutions, should receive equal amounts under Article IV of testator's will, and to find otherwise would violate the accepted principle that "equality is equity". This argument, traced to conclusion, would reduce the amount of charitable deductions that otherwise could be claimed to reduce the net taxable estate for federal estate tax purposes, and, additionally, would enhance the final total distributive shares of the individual residuary legatees at the expense of the charitable residuary legatees for whom the federal law grants the deduction. Such a result appears to be at war, rather than compatible, with the accepted principle that "equality is equity", and, therefore, more persuasively precludes, rather than raises, an inference that testator "intended" that the distributive shares of the charitable residuary legatees should be diminished by a proportionate share of the federal estate tax.

Fourth, appellants argue that charitable legatees are not preferred objects of the law in construing wills, and are not entitled to be exonerated from the impact of the federal estate tax absent language in the will of an intent to exclude them. The counter-balance to this argument is found in the will itself. By Article V, decedent bequeathed his sister's twenty-five percent share of the residuary estate to Doris Hamilton in the event his sister predeceased him. By Article VI, testator bequeathed that "portion of my estate" that Doris Hamilton "would have received under this will" to the Masonic Shrine Crippled Children's Hospital at St. Louis, in the event Doris Hamilton predeceased him. Additionally, if testator's sister and Doris Hamilton both predeceased him, the non-probate property jointly owned with them, would, absent further action on testator's part, have gone to the charitable residuary legatees. Even though charitable legatees are not preferred objects of the law, it is obvious that they were preferred objects of testator's largesse by the very language of his will.

Fifth, appellants argue that Edith Bell, sister of the testator, is entitled to preference over the charitable residuary legatees in construing testator's will to determine his intent as to the burden of the federal estate tax. What has been said regarding the fourth argument asserted by appellants dulls, with the same force, their fifth argument.

Sixth, appellants argue that since federal law requires the executrix to pay the federal estate tax, and fails to specifically exempt charitable legatees from the impact of the tax, testator "intended" that all residuary legatees were to share equally in what remained in his estate, after payment of the federal estate tax. Riggs v. Del Drago, supra, Carpenter v. Carpenter, supra, Hammond v. Wheeler, supra, and

Jones v. Jones, supra, strip appellant's sixth argument of all legal efficacy.

Seventh, appellants argue that sub-section (3) of Section 473.397, RSMo 1969, V.A.M.S., requires the executrix to pay the federal estate tax without presentment of a claim, and no Missouri statute exists which exempts the charitable residuary legatees from the impact of the tax, therefore, collectively, constituting an expression of statutory policy that the charitable residuary legatees were not to be exonerated from the impact of the federal estate tax, and any other result fails to carry out testator's intent. This argument, necessarily, fails to reach the threshold of convincibility for the same reasons heretofore drawn in determining that the statutory sections relied on suggested "a legislative intent to comport with the judicial doctrine of equitable apportionment initially espoused in Carpenter v. Carpenter, supra," and, in any event, failed to contain "even the slightest suggestion of a legislative intent to limit, debilitate or do away with the judicial doctrine of equitable apportionment".

Eighth, appellants argue that Sections 473.620 and 473.623, RSMo 1969, V.A.M.S. require that if there be any abatement of residuary devises, all, whether to individuals or charitable institutions, should abate equally and any other result fails to carry out testator's intent. This argument is defeated by the construction given 473.620 in Reed v. United States, supra, and ascribed to by this court, namely, "the purpose of Section 473.620 can be effectuated without abandoning or emasculating the doctrine of judicial apportionment."

Ninth, appellants argue that since testator's will failed to disclose any intent to burden them with all of the federal estate tax, the circuit court failed to follow the intent of testator in relieving the charitable legatees from the burden of the tax. Such is surely an exercise of fatally defective inverse logic when analyzed alongside the principle of applying the judicial doctrine of equitable apportionment absent a "clearly expressed intention of the testator to the contrary". (Jones v. Jones, supra). In support of this argument appellants state in their brief "The will of testator (T7–11) does not mention taxes". This statement, coupled with the prevailing law espoused in Carpenter v. Carpenter, supra, Hammond v. Wheeler, supra, and Jones v. Jones, supra, effectively destroys appellants' ninth argument.

Tenth, appellants argue that since the circuit court found that testator's will failed to reveal any intent, express or implied, as to where the burden of the federal estate tax should fall, and in the absence of an expression of intent on the part of testator to exonerate the charitable residuary legatees, the circuit court had no authority to exonerate the charitable residuary legatees from the burden of the tax. This argument demonstrates its own patent fallibility by even the most cursory examination of Carpenter v. Carpenter, supra, Hammond v. Wheeler, supra, and Jones v. Jones, supra.

Eleventh, appellants argue that the federal estate tax is an administration expense and should be treated as an administration expense and paid out of testator's probate estate before computation of the residuary estate for purposes of distribution. If this argument were to prevail, the judicial doctrine of equitable apportionment, for all practical purposes, would be rendered meaningless and the "burden on the residue" rule, which has been rejected in this state, would be reinstated.

Appellants place great emphasis on St. Louis Union Trust Company v. Krueger, 377 S.W.2d 303 (Mo. banc 1964), and vigorously assert that it constitutes controlling authority with respect to their core position that testator's will disclosed an intent that the federal estate tax was to be paid before the distributive shares, of the residuary charitable legatees were computed.

In *Krueger* the testatrix bequeathed to her husband "one-half of my estate, if living. Should my husband predecease me, I

hereby give and bequeath my said husband's share to my nephew". Additionally, the testatrix made nineteen specific monetary bequests and bequeathed the remainder of her estate to her nephew. Testatrix's husband died thirteen months after her demise. The executor of the husband's estate contended that the bequest made by testatrix to her husband should not be reduced by any portion of the federal estate tax, except to the extent of property in excess of the marital deduction. The court rejected the executor's contention in *Krueger* on the basis that construction of testatrix's will disclosed that she intended for the federal estate tax to be paid out of her gross estate before computation of the husband's distributive share. Determination of such intent was drawn from two sources in the will, (1) the fact that the husband was bequeathed a fractional share of the entire estate, i. e., "one-half of my estate", and (2) the fact that testatrix's will made no distinction between the fractional share going to her husband, if he survived her, or going to her nephew, if her husband predeceased her, and as to the latter, the court concluded that the share going to her husband, as primary beneficiary, and the share going to her nephew, as contingent beneficiary, were intended to be the same in either event. In *Krueger,* the court held, l. c. 306, that the case was being decided on what the will meant and that equitable apportionment had no bearing on the case "because the will settles it". One, the will in the instant case provides for fractional shares of the residue, not a fractional share of the gross estate. Two, the will in the instant case would involve a deduction in determining the net taxable estate that arises only if the contingent beneficiary takes, not a deduction arising if the primary beneficiary takes. This latter distinction precludes a finding that the testator in the instant case intended that the Shriners Hospital for Crippled Children was to receive the same share as Doris Hamilton, if she predeceased him. In the event Doris Hamilton predeceased testator, the portion going to the Shriners Hospital for Crippled Children, which would have gone to Doris Hamilton if she had survived testator, would be larger not the same, in view of the charitable deduction, and there is nothing contained in testator's will indicating that he intended otherwise. To conclude otherwise would be tantamount to construing testator's will to the effect that he intended that no charitable deduction should be claimed in ascertaining his net taxable estate for federal estate tax purposes. In view of the construction given testator's will by both the probate and circuit court, finding no expression of intent, express or implied, as to where the ultimate burden of the federal estate tax should rest, and herein affirmed by this court, no conflict with the holding in *Krueger* appears to exist.

Attention is now directed to the SECOND issue—should the individual residuary legatees, who were also joint owners with testator of certain non-probate property and one thereof was the beneficiary of certain insurance, be liable for contribution respecting the federal estate tax to the extent that such jointly owned property and insurance generated the tax. As to the Second issue, appellants first contend testator's will failed to disclose any intent that the recipients of jointly owned property should pay any part of the federal estate tax; second, the intent of testator was to prefer the surviving joint tenants of non-probate property over the testamentary beneficiaries; third, the relationship of testator to the surviving joint tenants of non-probate property, plus the legal device of joint ownership, disclosed that it was testator's intent that the joint property be free of the burden of the federal estate tax, as well as free from the burden of all liabilities surviving testator and costs and expenses of administering testator's estate; fourth, the judgment of the circuit court thwarts testator's intent and therefore results in a new will judicially written to the extent that the surviving owners of joint property are required to contribute to defray the federal estate tax; and fifth, the

**112**

judgment of the circuit court fails to follow 26 U.S.C.A. § 2002 and § 2205, and since there is no Missouri statute authorizing contribution, the judgment failed to follow the designated federal statutes.

It is apparent that the five arguments asserted by appellant as to the SECOND issue are to some extent redundant. Compaction of the five arguments leaves two viable questions to be resolved. Does the insulation cloaking jointly owned nonprobate property—the unavailability of such property for the payment of liabilities that survive decedent and costs and expense of administration—likewise insulate such property from the burden of the federal estate tax when there are sufficient funds in the testamentary estate to pay the tax and the will is silent as to any intent, express or implied, as to where the ultimate burden of the tax should lie? Do §§ 2002 and 2205, 26 U.S.C.A., proscribe the judicial doctrine of equitable apportionment? The answer to both questions is no. Carpenter v. Carpenter, supra, constitutes an authoritative basis for answering both questions in the negative. *Carpenter* specifically recognized the right to seek contribution from the recipients of nonprobate property, and, further, specifically held that 26 U.S.C.A. §§ 2002 and 2205, prescribed only "the initial method of paying the tax" but not "the matter of the ultimate liability to pay the tax".

The numerous cases, texts and statutes (federal and state) cited by appellants with respect to the SECOND issue fail to afford them relief.

The judicial doctrine of equitable apportionment springs from equitable principles and, by the very nature of its source, simply put, stands for the proposition that only property which generates the federal estate tax, whether probate or non-probate, shall bear the burden of the tax, absent statutory direction otherwise (there being none in Missouri) or a "clearly expressed intention" to the contrary on the part of the testator. Any other result would re-

duce the judicial doctrine of equitable apportionment to a mere legal platitude and would be the antithesis of applying equitable principles to a heretofore legally vexing problem.

Judgment affirmed.

All concur.