**Don W. PHIPPS, (Plaintiff) Respondent,**

v.

**James E. SCHAFFNER, Director of Revenue, State of Missouri, (Defendant) Appellant.**

**No. 57526.**

Supreme Court of Missouri, Division No. 1.

Feb. 11, 1974.

Edison Kaderly, Atty.-at-Law, Lamar, for respondent.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

HOLMAN, Judge.

The Director of Revenue suspended respondent's driver's license for 90 days beginning April 28, 1971. The respondent appealed to the circuit court pursuant to §

302.311,[1] and that court immediately entered a stay order. Upon a hearing the trial court set aside the suspension and also ordered that the director reduce the points assessed against respondent's operator's license to zero as of July 14, 1970, the date he received a reinstated operator's license. The director has appealed. We have jurisdiction because the appeal was taken prior to January 1, 1972, and a state officer is a party. Mo.Const., Art. V, § 3, V.A.M.S. McIntyre v. David, 431 S.W.2d 216 (Mo. 1968). We reverse and remand with directions.

The trial judge, in remarks at the time of his decision, stated, "Don, you've got a horrible driving record here." That record is as follows:

| Date | Action | Points |
|------|--------|--------|
| 2/15/66 | Conviction | 3 |
| 10/29/66 | Conviction | 1 |
| 11/ 3/66 | Conviction | 2 |
| 12/13/66 | Conviction | 3 |
| 12/20/66 | Convicton | 3 |
| 1/25/67 | Warning | — |
| 2/ 6/67 | Revocation | — |
| 5/ 4/67 | Conviction | 3 |
| 6/21/67 | Revocation | — |
| 7/14/70 | Reinstated | 6 |
| 3/25/71 | Conviction | 3 |
| 4/28/71 | Suspension in issue | — |

Section 302.302 provides for the point system by which a certain number of points are assessed against chauffeurs' or operators' licenses for certain designated traffic violations. Section 302.304, as it existed at all times here in question (it has since been re-enacted), provided that the director should " * * * (2) Suspend the operating privileges of any person whose driving record shows he had obtained or accumulated eight points in eighteen months. The time of suspension shall not be less than thirty days nor more than ninety days; (3) Revoke the operating privileges of any person when his driving record shows he has obtained or accumulated twelve points in twelve months or eighteen points in twenty-four months or twenty-four points in thirty-six months; (4) Upon issuing a reinstated operator's or chauffeur's license, reduce the accumulated point value to six points."

Section 302.306 provides that after points have been assessed there shall be a reduction as follows: "1. For the first full year of operation without conviction for a moving violation, the total accumulated point value charged against an operator or chauffeur shall be reduced by one-third. 2. For the second consecutive full year of operation without conviction of a moving violation, the remaining total accumulated point value charged against an operator or chauffeur shall be reduced by one-half. 3. For the third consecutive full year of operation without conviction for a moving violation, the remaining accumulated point value charged against an operator or chauffeur shall be withdrawn."

Respondent testified that shortly before the revocation of June 20, 1967 became effective, he was inducted into the United States Army and remained in the army until his honorable discharge on April 14, 1970. He further testified that during his three years in the army he drove various army vehicles without any violation of any kind.

Respondent was entitled to obtain a reinstated driver's license at any time after June 21, 1968, upon proper application, complying with the Safety Responsibility Law and passing the required examination. He did not obtain such until July 14, 1970. At that time the director followed the specific requirement of § 302.304(4) in reducing his accumulated point value to six points. Respondent contends that in accordance with § 302.306 the director should have reduced his points to zero at that time because of his safe driving record for three years while in the army. If that had been done the conviction of March 25, 1971, would not have provided

sufficient points to have warranted the suspension in issue. Since this appeal was taken, this court has expressly ruled this specific contention against a similar motorist in Holstein v. Schaffner, 498 S.W.2d 560 (Mo.1973). We should, however, discuss the contention further because respondent has advanced the argument that the statutes heretofore mentioned deprive him of equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution. He argues that another citizen operating a vehicle in Missouri without a violation would have obtained the benefit of § 302.306, but such has been denied him even though he was operating army vehicles without violation of law. This constitutional contention was not discussed in Holstein.

We rule this point contrary to respondent's contention. To a large extent, *Holstein* has ruled this contention by its holding that in order for § 302.306 to be applicable it must be presupposed that a reinstated operator's license with a six-point accumulated point total had been issued. Moreover, respondent had the same right to obtain a reinstated license at the end of the revocation period as any other citizen. He was home on leave in both 1968 and 1969. As a matter of fact, he did make application for a license in March 1969 but it was denied because he had not seen fit to comply with the Safety Responsibility Law. Absent compliance with that law he (or any other citizen) was required to wait for a period of three years from the date of revocation before a license could be obtained. Neither respondent nor any other Missouri citizen could have obtained point credit for periods of safe driving under § 302.306 without having first secured a Missouri operator's license. It therefore necessarily follows that respondent was not denied equal protection of the laws.

In support of his contention respondent has cited Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), and Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). Those cases, although stating certain sound principles, are so factually distinguishable from the case at bar that they do not aid respondent. *Carrington* held that the State of Texas could not deny the right to vote to a bona fide resident merely because he was a member of the armed services. *McLaughlin* held that a criminal statute denied equal protection because it prohibited certain conduct by unmarried interracial couples while not penalizing the same conduct when engaged in by members of the same race. *Lichter* dealt with the validity of the Act providing for renegotiation of contracts following World War II in order to prohibit excess profits. We assume it was cited because it contains the statement that "[I]n total war it is necessary that a civilian make sacrifices of his property and profits with at least the same fortitude as that with which a drafted soldier makes his traditional sacrifices of comfort, security and life itself." 334 U.S. l. c. 754, 68 S.Ct. 1301. While that observation is unquestionably true, it has no application to the problem before us.

We should perhaps mention that since respondent obtained his reinstated license (July 14, 1970), the General Assembly has enacted laws which provide a procedure for the removal of the accumulated points of certain recently discharged members of the armed services. See § 302.307, which became effective on September 28, 1971. That section was thereafter repealed and re-enacted as a part of § 302.304(5), which became effective August 13, 1972. Respondent concedes that he is not entitled to the benefit of those laws.

For the reasons indicated, the judgment is reversed and the cause is remanded with directions to reinstate the director's order of suspension.

All concur.